# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 3, 2022

Lyle W. Cayce
Clerk

No. 20-50822

---

ANTONIO BUEHLER,

*Plaintiff—Appellee Cross-Appellant*,

*versus*

RANDY DEAR, *in his individual and official capacities*, ALJOE GARIBAY, *in his individual and official capacities;* WESLEY DEVRIES, *in his individual and official capacities*; MONIKA MCCOY, *in her individual and official capacities*,

*Defendants—Appellants Cross-Appellees*,

CITY OF AUSTIN, QUINT SEBEK, *in his individual and official capacities;* JOHN LEO COFFEY, *in his individual and official capacities*; RYAN ADAMS, *in his individual and official capacities*; ALLEN HICKS, *in his individual and official capacities*; REGINALD PARKER, *in his individual and official capacities*,

*Defendants—Cross-Appellees*.

---

Appeal from the United States District Court
for the Western District of Texas
USDC 1:17-CV-724

---

No. 20-50822

Before CLEMENT, SOUTHWICK, and WILLETT, *Circuit Judges*.

DON R. WILLETT, *Circuit Judge*:

This appeal concerns the line between filming the police, which is legal, and hindering the police, which is not. Without question, video footage plays a major role in exposing incidents of police brutality. The ubiquity of smartphone cameras has made eyewitnesses of us all; as smartphones proliferate, so do recordings of police interactions (some commendable, others condemnable). The rub is figuring out when filming veers from documenting to interfering. For example, how far away should a citizen-videographer be so as not to get in the way? How close is "too close" such that the filming, however well-intentioned, becomes hazardous, diverting officers' attention and impeding their ability to perform their duties in fast-moving, highly charged situations?

In the wee hours of August 2, 2015, Antonio Buehler, a police-accountability activist, was arrested on crowded Sixth Street in downtown Austin while "cop watching" (video-recording police activity). Buehler insists he was just filming; the officers insist he was interfering. In short, Buehler and the officers had repeated verbal confrontations about how close to them he was permitted to stand while recording. The bickering escalated, with Buehler ultimately arrested for misdemeanor interference with performance of official duties. Four Austin police officers took Buehler to the ground and handcuffed him, with Buehler suffering minor bruises and lesions as a result.

Buehler brought various constitutional claims against the City of Austin and nine officers of the Austin Police Department. Buehler alleged false arrest and excessive force in violation of the Fourth Amendment and retaliation for the exercise of his First Amendment right to film the police. The district court ruled mostly for the Defendants, but not fully. It dismissed Buehler's municipal-liability and First Amendment claims and granted summary judgment to the individual Defendants on Buehler's false-arrest

claim, while denying summary judgment on his excessive-force claim. Defendants filed this interlocutory appeal of the partial denial of their summary judgment motion, and Buehler cross-appealed the district court's unfavorable rulings of all but his excessive-force claim.

We hold that none of the officers involved in Buehler's arrest used excessive force in violation of the Fourth Amendment. We also conclude that summary judgment for the officers on Buehler's false-arrest claim was proper; the officers were entitled to qualified immunity on Buehler's First Amendment claim; and Buehler's bystander- and municipal-liability claims fail for lack of an underlying constitutional violation. Accordingly, we REVERSE the district court's denial of summary judgment as to Buehler's excessive-force claim and AFFIRM the district court in all other respects.

I

Cross-Appellant Antonio Buehler leads the Peaceful Streets Project (PSP), a watchdog organization with the stated mission of holding police accountable for official misconduct. In the early morning hours of August 2, 2015, Buehler and several other PSP members were cop watching in downtown Austin. Buehler regularly filmed the Austin police, and many officers were familiar with him. In footage taken by Buehler, Officer Randy Dear can be seen talking to a passerby while Buehler films the encounter. Afterwards, Dear turns away, at which point Buehler shouts at Dear to get his attention and then begins arguing with Dear about the extent of Buehler's right to film the police. Buehler repeatedly interrupts Dear's answers to questions, and Dear tries several times to walk away while Buehler follows with his camera. Towards the end of the clip, Buehler can be heard saying, "I'm going after Dear. F***ing pigs. I hate pigs."

Other footage shows that, as of around 1:30 a.m., Buehler was standing next to a group of police officers standing in the middle of Sixth Street.

No. 20-50822

Buehler is positioned extremely close to (though not physically touching) Officer Dear, and the two can be heard arguing contentiously from time to time. Officers Garibay and DeVries also can be seen arguing with Buehler about whether he was maintaining a sufficient distance while filming. In footage taken by Buehler, Dear can be seen turning to Buehler and telling him, "just going to let y'all know, the next time we go to a disturbance and y'all get in the way . . . . The next time you're interfering, you're going to be arrested." As he walks away from Buehler, Dear then adds, "You've been warned, sir." Buehler follows him briefly before pointing his camera at the other officers and asking several times, "What does that mean? Can you explain that?" Officer Sebek responds, "arm's length, please. Arm's length, please." Footage taken from another angle shows that Buehler continued to stand closer to the officers than an arm's length away (certainly no more than two feet, and probably no more than one).

After nearly two minutes pass with little movement by the officers or Buehler, Dear turns to Buehler to give further orders, telling Buehler, "you're interfering with my space here so I can monitor the crowd," and, "I'm going to ask you one more time." Buehler then takes several steps and pivots such that he is directly facing Dear, but standing about the same distance away. A few seconds later, Dear tells Buehler, "Go ahead and turn around, sir. Go ahead and turn around," and "You're under arrest." While Dear is giving these orders, Buehler begins taking steps backward away from the officers, even as Dear is walking forward towards Buehler. Buehler then turns his back on the officers and takes one or two additional steps away from them. Officer Garibay grabs Buehler's wrists from behind in an attempt to restrain him. Footage of the incident taken at ground level appears to show Buehler taking another step after being grabbed, lurching forward as Garibay attempts to make the arrest, though aerial ("x") footage taken by an APD camera suggests that Buehler's sudden motion was most likely an attempt to throw the device with which he was filming to someone else so as to preserve

No. 20-50822

his footage. At that point, Dear, Garibay, and DeVries take Buehler to the ground and hold him in a prone position while placing him in handcuffs. Officer McCoy also ran to assist after Buehler was taken down, holding Buehler's legs still while the other officers carry out the arrest. Buehler remained on the ground for between 40 and 45 seconds.

Afterwards, the officers took him to the Travis County jail and booked him for misdemeanor interference with official duties and resisting arrest. Buehler claims to have suffered mental pain, bruises on his tricep and head, and abrasions to his face as a result of the arrest (though any facial injuries he suffered were apparently not serious enough to be visible in photographs of him taken soon after the incident).

\* \* \*

In August 2017, Buehler sued the City of Austin and nine APD officers (Dear, Garibay, DeVries, McCoy, Sebek, Coffey, Adam, Hicks, and Parker[1]) under 42 U.S.C. § 1983, alleging false arrest and excessive force in violation of the Fourth Amendment, and retaliation for exercise of his First Amendment right to film police. Buehler also brought municipal-liability claims against the City and bystander-liability claims against the officers not directly involved in his arrest. Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The district court granted Defendants' motion in part, holding that they were entitled to qualified immunity on the First Amendment claim; and that Buehler had failed to state claims for either bystander- or municipal-liability, or for excessive force against Defendants Coffey, Sebek, Hicks, or Adam. But the

---

[1] For reasons it did not make clear, the district court dismissed Buehler's claims against Parker, who was not present when Buehler was arrested but, according to Buehler, violated the Constitution by inadequately investigating the arrest. None of Buehler's appellate briefing challenges or even mentions the dismissal of Parker as a defendant. The issue has thus been abandoned, *see Akuna Matata Investments, Ltd. v. Tex. Nom Ltd. P'ship*, 814 F.3d 277, 282 n.6 (5th Cir. 2016), and we do not consider it.

district court denied Defendants' 12(b)(6) motion as to Buehler's false-arrest and excessive-force claims against the four officers who participated in his arrest (Dear, Garibay, DeVries, and McCoy, hereinafter "Officers").[2]

The arresting Officers subsequently moved for summary judgment on Buehler's remaining claims. The district court granted the Officers' motion as to the false-arrest claim but held that Buehler had established a genuine dispute of material fact as to whether they were entitled to qualified immunity on the excessive-force claim, thus precluding summary judgment.[3] The district court subsequently denied both Buehler's motion for reconsideration and the Officers' motion to alter or amend judgment. The Officers then filed this interlocutory appeal of the denial of summary judgment on the excessive-force claim, and the district court granted Buehler's request for certification of partial final judgment so that he could cross-appeal that court's judgment in all other respects.[4]

## II

The standards of review governing Buehler's cross-appealed claims are straightforward. He appeals the dismissals of his First Amendment and municipal-liability claims, as well as the grant of summary judgment to Defendants on his false-arrest claim. We review both de novo.[5] "To survive

---

[2] *See Buehler v. City of Austin*, No. 1:17-CV-724-LY, 2018 WL 4225046 (W.D. Tex. Sept. 5, 2018).

[3] *See* No. 1:17-CV-724-DAE, 2020 WL 5793008 (W.D. Tex. Mar. 27, 2020).

[4] We have jurisdiction over the Officers' appeal because, notwithstanding the general rule that only final judgments are immediately appealable, a denial of summary judgment on qualified-immunity grounds is immediately appealable under the collateral-order doctrine. *See Mitchell v. Forsyth*, 472 U.S. 511, 524–30 (1985). Similarly, we have jurisdiction over Buehler's cross-appeal under 28 U.S.C. § 1291 because the district court granted Buehler's request for certification of partial final judgment so that he could cross-appeal the court's disposition of his other claims. *See* FED. R. CIV. P. 54(b).

[5] *Magee v. Reed*, 912 F.3d 820, 822 (5th Cir. 2019).

a [12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[6] And a motion for summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."[7]

A different standard, however, governs the Officers' interlocutory appeal. On interlocutory appeal from an order denying qualified immunity, we review de novo the district court's legal determinations as to the materiality of factual disputes, but lack jurisdiction to review its determinations that factual disputes are "genuine."[8] The distinction between permissible "materiality" review and impermissible "genuineness" review can be hazy in practice, but in this case, the parties agree that the facts are not in question. The issue presented by the Officers' interlocutory appeal is simply "whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment."[9]

It is also noteworthy for purposes of appellate review that the record here includes extensive video evidence of Buehler's arrest and the events leading up to it from several different angles. "Although we review evidence in the light most favorable to the nonmoving party" on appeal from a district court's disposition of a summary-judgment motion, "we assign greater weight, even at the summary judgment stage, to the facts evident from video

---

[6] *Id.* (quoting *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017)).

[7] FED. R. CIV. P. 56(a).

[8] *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015).

[9] *Kinney v. Weaver*, 367 F.3d 337, 348 (5th Cir. 2004).

recordings taken at the scene."[10] "[W]e are not required to accept factual allegations that are 'blatantly contradicted'" by such evidence.[11] Instead, we "view[] the facts in the light depicted by the videotape."[12]

### A

We begin by considering the question presented by the Officers' interlocutory appeal—namely, whether Dear, Garibay, DeVries, and McCoy (the four APD officers involved in Buehler's arrest) were entitled to summary judgment on his excessive-force claim. The Officers moved for summary judgment on the ground that their use of force in arresting Buehler did not violate the Fourth Amendment or, in the alternative, that they were at least entitled to qualified immunity on this issue. The district court denied the motion, finding that genuine disputes of material fact existed as to whether the Officers had used excessive force or were protected by qualified immunity. As we explain below, we disagree.[13]

---

[10] *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011).

[11] *Tucker v. City of Shreveport*, 998 F.3d 165, 170 (5th Cir. 2021) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

[12] *Id.* (quoting *Scott*, 550 U.S. at 381).

[13] The district court, after "f[inding] that there is a genuine issue of material fact as to whether" the Officers' use of force violated the Fourth Amendment, concluded that it "need not conduct a full analysis as to whether the right was clearly established or not." *Buehler v. Dear*, 2020 WL 5793008, at *11 n.5 (W.D. Tex. Mar. 27, 2020). We agree with the Officers that this is an incorrect statement of the law. "To deny qualified immunity at the summary judgment stage, [a] district court must answer 'yes' to *two* questions." *McDonald v. McClelland*, 779 F. App'x 222, 225 (5th Cir. 2019) (per curiam). If the court finds that "the alleged conduct amounts to a constitutional violation," then it must also determine "whether the right was clearly established at the time of the conduct." *Lytle v. Bexar Cnty.* 560 F.3d 404, 410 (5th Cir. 2009). Here, since the district court's opinion erroneously skipped the second inquiry, we perhaps could remand for the district court to consider the clearly-established-law question in the first instance. That was how we disposed of a case involving an interlocutory appeal of a denial of summary judgment where

No. 20-50822

*Governing Law.* The Fourth Amendment prohibits police from using more force than is reasonably necessary to effect an arrest.[14] As one American court admonished 180 years ago, "[a] person having authority to arrest another must do it peaceably, and with as little violence as the case will admit of. . . . [I]f resisted he may use force sufficient to effect his purpose; but if no resistance be offered or attempt at escape, he has no right rudely and with violence, to seize and collar his prisoner."[15] Nevertheless, it is hornbook law that "the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."[16]

A plaintiff arguing that a public official has used excessive force in violation of the Fourth Amendment thus "must show: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and

---

the district court erroneously "failed to address [the second] half of the qualified-immunity inquiry." *McDonald*, 779 F. App'x at 225.

In this case, however, we believe that remand is unnecessary. After the Officers pointed out the district court's mistake of law in their motion to alter or amend judgment, the district court addressed the second step of the qualified-immunity analysis in its order denying that motion. And the Officers have appealed both the original denial of summary judgment *and* its denial of their motion to alter or amend judgment. We "generally review[s] a decision on [such] a motion to . . . for abuse of discretion," except "[t]o the extent" that the decision was based on "a question of law," in which case "the standard of review is *de novo*." *Pioneer Nat. Res. USA, Inc. v. Paper, Allied Indus., Chem. & Energy Workers Int'l Union Loc. 4-487*, 328 F.3d 818, 820 (5th Cir. 2003). Here, the district court apparently denied the Officers' motion to alter or amend judgment on the purely legal ground that the unconstitutional conduct in which they allegedly engaged violated clearly established law. We therefore are satisfied that both steps of the qualified-immunity inquiry are properly presented for our de novo review.

[14] *Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020).

[15] *State v. Mahon*, 3 Del. 568, 569 (1842); *accord Golden v. State*, 1 S.C. 292, 302 (1870).

[16] *Graham v. Connor*, 490 U.S. 386, 396 (1989); *see also Fulton v. Staats*, 41 N.Y. 498, 499 (1869) (Officers may "use as much force as [i]s necessary to make the arrest.").

9

(3) the excessiveness of which was clearly unreasonable."[17] "'The test of reasonableness under the Fourth Amendment is not capable of . . . mechanical application,'" but instead "requires careful attention" to each case's facts.[18] Among the "considerations that inform the need for force: [are] (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of officers or others, and (3) whether the suspect was actively resisting . . . or attempting to evade arrest."[19] Still, at the end of the day, the touchstone of our inquiry is simply the reasonableness of the force employed. "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of . . . officials, giving them "'fair leeway for enforcing the law in the community's protection.'"[20] "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment."[21]

In addition, even if the Officers violated the Fourth Amendment, Buehler's claims against them cannot proceed unless he overcomes qualified immunity, which shields officials performing discretionary functions from "liability for civil damages insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known."[22] The plaintiff has the burden of showing that the unlawfulness of

---

[17] *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005).

[18] *Graham*, 490 U.S. at 396 (quoting *Bell v. Wolfish,* 441 U.S. 520, 559 (1979)).

[19] *Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020).

[20] *Heien v. North Carolina*, 574 U.S. 54, 60–61 (2014) (quoting *Brinegar v. United States,* 338 U.S. 160, 176 (1949)).

[21] *Graham*, 490 U.S. at 396–97 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

[22] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

the defendant's conduct was clearly established at the time it occurred.[23] Although the plaintiff need not identify "a case *directly* on point" in order to make such a showing, he or she must point to "authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful."[24] "[T]he qualified immunity analysis in an excessive force case" such as this one "involves two distinct reasonableness inquiries. One is whether the officer's use of force was objectively reasonable in light of Fourth Amendment standards. The other is whether the right was clearly established such that a reasonable officer would know that the particular level of force used was excessive."[25]

The Supreme Court formerly "mandated a two-step sequence" for resolving qualified immunity claims: "First, a court [had to] decide whether the facts . . . alleged . . . make out a violation of a constitutional right. Second, if the plaintiff . . . satisfied this first step, the court [had to] decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."[26] Today, however, "[c]ourts of appeal are free to decide which of the two prongs of the qualified immunity analysis to address first."[27] Moreover, although we now may also "leapfrog" the first prong and resolve cases solely on the basis that defendants' conduct—even if unlawful—did not violate clearly established law, "we think it better to address both steps in order to provide clarity and guidance for officers and courts."[28]

---

[23] *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015).

[24] *Id.*

[25] *Hogan v. Cunningham*, 722 F.3d 725, 735 (5th Cir. 2013).

[26] *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

[27] *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016) (per curiam).

[28] *Joseph v. Bartlett*, 981 F.3d 319, 331 (5th Cir. 2020).

\*       \*       \*

*Application.* The Officers first argue that Buehler's excessive-force theory fails as a matter of law because his injuries were too minor. It is true that, "[t]o state a claim for excessive use of force, the plaintiff's asserted injury must be more than *de minimis*."[29] We have tossed out an excessive-force allegation where, for example, "the most substantial injury claimed by [the arrestee] [wa]s that she suffered bruising on her wrists and arms because the handcuffs were applied too tightly," reasoning that "minor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force."[30]

Nevertheless, the injury requirement is a sliding scale, not a hard cutoff. "[T]he amount of injury necessary to satisfy [the] requirement of 'some injury' . . . is directly related to the amount of force that is constitutionally permissible under the circumstances."[31] "[A]s long as a plaintiff has suffered some injury, even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force."[32] Here, Buehler suffered abrasions to his face, as well as bruises on his tricep and head, as a result of the arrest. He also alleges that the incident caused him mental trauma. We therefore conclude that Buehler's injuries, while minor, are not so minor that his excessive-force claim necessarily fails as a matter of law.

---

[29] *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007).

[30] *Id.* at 417.

[31] *Ikerd v. Blair*, 101 F.3d 430, 434–35 (5th Cir. 1996).

[32] *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017) (quoting *Brown v. Lynch*, 524 F. App'x 69, 79 (5th Cir. 2013)).

Still, a reviewing court "should . . . consider the seriousness of the alleged injuries in determining whether the officer's conduct was objectively reasonable."[33] The district court determined that Buehler had produced enough evidence that "a reasonable jury could conclude that [he] had suffered an injury as a result of his arrest."[34] As for the *extent* of the alleged bruises, abrasions, and mental pain, the district court remarked only that Buehler's "injuries appear relatively minor" and "are the type that the Fifth Circuit has held to be *de minimis*."[35] We agree. By consulting the largely undisputed evidence in the record that relates to this issue,[36] we conclude that Buehler's injuries are properly characterized as "minor" for purposes of excessive-force analysis. Photographs taken of Buehler's face immediately after the incident reveal that any lacerations he suffered were so minor as to be essentially invisible. The security camera footage of Buehler's booking at the Travis County Jail show him moving around comfortably with no signs of physical injury or mental distress. What is more, Buehler admitted in his deposition that he did not physically suffer "anything beyond . . . bruising and pain," for which he did not seek medical attention while in jail or the day he was released (and apparently was never prescribed any treatment except "self-care" and "ibuprofen or something"). The limited extent of Buehler's injuries tends to support the Officers' argument that they acted reasonably.

---

[33] *Harper v. Harris Cty.*, 21 F.3d 597, 601 (5th Cir. 1994); *accord Deville v. Marcantel*, 567 F.3d 156, 168 (5th Cir. 2009).

[34] 2020 WL 5793008, at *9.

[35] *Id.*

[36] "[W]here a district court does not set out the factual basis underlying its legal determinations related to a claim of qualified immunity, the court of appeals"—even in an interlocutory appeal such as this one—may "review the record to determine what facts the district court assumed." *Beltran v. City of El Paso*, 367 F.3d 299, 302 (5th Cir. 2004).

No. 20-50822

Moreover, we believe Buehler's self-reported mental suffering is entitled to relatively little weight in our Fourth Amendment reasonableness analysis, given that we have noted in another case that "any non-physical injury [the plaintiff-arrestee] may have suffered due to the time spent handcuffed lasted at most 20 seconds and was therefore *de minimis*," and thus supported the ultimate conclusion that the arresting officer's use of force in that case did not violate the Fourth Amendment.[37] That reasoning applies with almost as much force here, as Buehler spent fewer than 45 seconds on the ground while the Officers handcuffed him. Indeed, we have rejected similar attempts by excessive-force plaintiffs to parlay their minimal injuries into more serious ones by tacking on allegations of psychological suffering.[38]

The Officers and Buehler further dispute whether interfering with officers' public duties is a "severe" offense.[39] But we have already spoken to this issue in a precedential case—holding that, for excessive-force analysis purposes, "interference with public duties" under Texas law is "a minor offense."[40] This consideration favors Buehler's position for purposes of the Fourth Amendment reasonableness inquiry.

---

[37] *Johnson v. Hollins*, 716 F. App'x 248, 254 (5th Cir. 2017).

[38] *See Tarver*, 410 F.3d at 752; *Mesa v. Prejean*, 543 F.3d 264, 272–73 (5th Cir. 2008); *Brooks v. City of W. Point*, 639 F. App'x 986, 990 (5th Cir. 2016).

[39] Buehler also attempts to bolster his excessive force-claim by arguing that "no crime [was] taking place" when he was arrested. This argument fails to appreciate that excessive-force and false-arrest claims are "separate and distinct," such that an "excessive force claim" must be "analyze[d] . . . without regard to whether the arrest itself was justified." *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007).

[40] *Westfall v. Luna*, 903 F.3d 534, 547 (5th Cir. 2018).

The Officers and Buehler also disagree as to whether Buehler's actions can be characterized as resisting arrest. According to Garibay's affidavit, when Dear told Buehler to turn around and that he was under arrest, Buehler "turned around" and began "walking away." Buehler, on the other hand, asserts that he was merely turning around in preparation for his arrest, in accordance with Dear's orders. Footage of the incident, consistent with Garibay's description, depicts Buehler taking several steps backwards away from officers immediately after Dear tells Buehler to turn around and informs him that he is under arrest. Buehler turns his back on the Officers and begins to walk away. Based on the video evidence, we conclude that, at the very least, the Officers could reasonably have believed that Buehler was turning to walk away rather than complying with their orders. We "must measure the force used under the facts as a reasonable officer *would perceive them*, not necessarily against the historical facts."[41] And we have acknowledged that, as the Officers in this case duly point out, a "suspect [who] . . . back[s] away from the arresting officers" is "actively resist[ing] arrest"—albeit mildly.[42]

The Officers further contend that when Garibay grabbed Buehler's wrists from behind in an effort to restrain him, Buehler lurched forward in an attempt to get away—a maneuver the Officers characterize as another form of resistance by Buehler. Again, the street-level video tends to support this account. And "[t]he great weight of Texas authority indicates that pulling out of an officer's grasp is sufficient to constitute resisting arrest" for

---

[41] *Griggs v. Brewer*, 841 F.3d 308, 313 (5th Cir. 2016).

[42] *Cadena v. Ray*, 728 F. App'x 293, 296 (5th Cir. 2018) (per curiam) (cleaned up) (quoting *Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012)).

purposes of Texas Penal Code § 38.03(a)[43]—and, it stands to reason, for purposes of excessive-force analysis. While the HALO footage tends to suggest (and the district court apparently believed[44]) that Buehler's jerking motion was probably an attempt to hand off his recording device, the Officers likely thought at the time that Buehler's sudden motion was an effort to break free of Garibay's grasp. And once again, the "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[45]

Finally, yet another consideration bearing upon the reasonableness of an arresting officer's use of force is whether "it involved 'measured and ascending responses' to a [suspect's] noncompliance."[46] We held in one case, for instance, that arresting officers' use of force to subdue a suspect did not violate the Fourth Amendment, emphasizing that "the Officers spoke calmly to [the suspect] for several minutes despite his attempt to interfere with his wife's arrest and his erratic behavior throughout the interaction. Furthermore, [the suspect] not only disobeyed the Officers' order to submit to arrest, he had disobeyed their prior order to leave the [hotel] lobby" where

---

[43] *Ramirez v. Martinez*, 716 F.3d 369, 376 (5th Cir. 2013).

[44] The district court described the relevant chain of events as follows: "The video footage shows [the Officers] each physically restraining Plaintiff mere moments after Dear instructed Plaintiff to turn around and stated to Plaintiff that he was under arrest. Plaintiff turned around and took maybe a step or two away from Dear, yet certainly does not appear to be resisting or evading arrest. He appears to be mostly focused on passing his camera to someone else." 2020 WL 5793008, at *11. We do not take issue with the district court's literal description of the events depicted in the video; rather, we disagree with the district court's "assess[ment] [of] the legal significance" of those events. *Kinney*, 367 F.3d at 348.

[45] *Graham v. Connor*, 490 U.S. 386, 396–97 (1989).

[46] *Poole*, 691 F.3d at 629 (quoting *Galvan v. City of San Antonio,* 435 F. App'x 309, 311 (5th Cir. 2010) (per curiam) (unpublished)).

these events were taking place.[47] This reasoning lends support to the Officers' position in this case. While Buehler's conduct leading to his arrest was perhaps not as "erratic," he relentlessly followed around officers for hours, disobeying their repeated and unambiguous commands that he step back at least arm's length away so as not to block the Officers' field of vision. We believe their conduct in dealing with Buehler can accurately be described as "measured and ascending."

Based on these considerations, we are quite certain at the outset that at least Officer McCoy is entitled to summary judgment on the excessive-force claim. Where such claims are brought against multiple officers in connection with a single arrest, a reviewing court of course "must analyze the officers' actions separately."[48] And in our view, it is beyond reasonable debate that McCoy did not violate the Fourth Amendment, let alone "clearly established" Fourth Amendment caselaw. She explains in her affidavit that, consistent with what footage of the arrest appears to show, she merely placed her knee on Buehler's legs to hold them still while he was handcuffed, (or, in his words, "grabbed one of my legs") and, as he admits, did not "cause [him] any injury."

Precedent confirms the commonsense notion that McCoy, in so doing, did not violate the Fourth Amendment. We held, in an arrestee's similar excessive-force suit against the two officers who arrested her, that the officer who threw her to the ground and injured her spine was not entitled to summary judgment, but the other officer (who restrained the arrestee once she was on the ground) *was* so entitled: "the reasonable cause of [the plaintiff's spinal] injury is [the first officer's] body-slam and not [the second

---

[47] *Cadena*, 728 F. App'x at 296.

[48] *Darden v. City of Fort Worth*, 880 F.3d 722, 731 (5th Cir. 2018).

officer's] assistance in holding [the plaintiff] on the ground. [The plaintiff's] other injuries, including the abrasions and bruises, bloody urine, and high blood pressure and heart rate, which may have been caused by [the second officer's] actions, are . . . *de minimis*."[49] So too with McCoy's actions here.[50]

As for the other three arresting Officers (Dear, Garibay, and DeVries), the excessive-force analysis is slightly closer. On the one hand, working in Buehler's favor is the fact he was not being arrested for a "serious" offense, nor did he pose an obvious danger to the Officers or to passersby. On the other hand, however, the Officers rightly point out that Buehler's conduct amounted to active resistance to arrest, that they used gradually ascending means of attempting to gain control of the situation before resorting to force, and that Buehler's injuries were extremely minor. We think the balance tips in the Officers' favor. Still, in an abundance of caution, we turn to caselaw for further guidance as to whether the Officers' use of force was reasonable. On that score, Buehler directs our attention to several of our decisions that supposedly clearly establish that the use of force in this case violated the Fourth Amendment. We examine each in turn.

First, Buehler cites a case where we held that "a reasonable jury could find that [an arrestee's] pulling his arms away from the officers, along with

---

[49] *Westfall v. Luna*, 903 F.3d 534, 549–50 (5th Cir. 2018).

[50] The district court, despite conceding "that it is a close[] call whether Plaintiff has an excessive force claim against McCoy, particularly considering here that he does not allege any injury to his knees or legs," reasoned that her "physical restraint . . . contributed to [Buehler's] overall injuries and certainly to his alleged psychological injuries." 2020 WL 5793008, at *9. We do not know what led the district court to conclude that McCoy "contributed to [Buehler's] overall injuries," a finding that is contradicted by the evidence. But even if the district court's remark to that effect is a factual "genuineness" holding that we may not second-guess on interlocutory appeal, we are still confident based on the record that any "contribut[ion]" by McCoy to Buehler's injuries was *de minimis* as a matter of law.

the other circumstances of [his] arrest, did not justify the officers' decision to tackle [him] to the ground."[51] The use of force in that case, however, was far more extreme than the force used against Buehler.[52] Buehler also cites a decision in which we held that an arresting officer violated the clearly established law governing excessive force when he "rushed towards [a suspect] and administered a blow to [his] upper back or neck," and then "took [the suspect] to the ground" to handcuff him, even though the suspect engaged in no "active resistance or an attempt to flee" during the whole encounter.[53] The suspect visited the hospital later that day for treatment, where he was diagnosed with fairly serious injuries[54]—certainly more serious than those sustained by Buehler in this case. Buehler similarly points to a case where we held that arresting officers were not entitled to qualified immunity from the excessive-force claim of an arrestee who "suffered a broken shoulder as a result of being tackled" by the officers, "from whom he was not fleeing."[55] Once again, however, a closer look at the facts reveals that the injuries sustained by this unfortunate suspect were orders of magnitude greater than those suffered by Buehler as a result of his arrest.[56]

---

[51] *Trammell v. Fruge*, 868 F.3d 332, 342 (5th Cir. 2017).

[52] The force in that case included repeated strikes to the arrestee's arms, thighs, and ribs, and resulted in him suffering "'mildly displaced right L1, L2, and L3 transverse process fractures" that required him to "use[] a wheelchair while at home." *Id.* at 338.

[53] *Hanks v. Rogers*, 853 F.3d 738, 743, 746, 745 (5th Cir. 2017).

[54] He had suffered "contusions, acute strains, and bruised ribs" and "received two prescriptions for pain medication and a form releasing him from work for two days." *Id.*

[55] *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000).

[56] The arrestee in that case "spent 8 days in the hospital, at a cost of almost $32,000. He needed a plate and screws inserted into his shoulder," "missed a year of work," and was "likely [to] need his entire shoulder replaced in the future." *Id.* at 734.

No. 20-50822

In our view, the forced used in each of these cases was far more egregious than that used by the Officers in arresting Buehler—who actively resisted (albeit mildly) and whose injuries were far less severe. Since "[t]he extent of an injury is an element of an excessive force claim that must be clearly established in . . . the qualified immunity analysis,"[57] we disagree with Buehler that these decisions would have put the Officers on notice that the comparatively negligible injury suffered by Buehler during his arrest rendered the force used to carry out that arrest unconstitutional.

With that said, some of the cases Buehler cites involved facts closer to those here. First, he cites *Ramirez v. Martinez*, where we held that it "was objectively unreasonable" for "several officers [to] force[] [a misdemeanor arrestee] to the ground" and tase him twice (including once after he was already handcuffed), resulting in burns—particularly given the absence of "resistance on [the arrestee's] part," except for "pulling his arm out of [an officer's] grasp."[58] Still, this was an appreciably more severe use of force than what was employed by the Officers who arrested Buehler (which did not involve a taser[59]); the arrestee in *Ramirez* alleged, and the Officer-Defendants in that case did not contest, that he "'sustained numerous injuries to his body, including, but not limited to, contusions and abrasions to his body, and burn marks from the taser probes.'"[60] Further, our reasoning in *Ramirez* focused on the fact that the forceful arrest measures in question were

---

[57] *Flores v. City of Palacios*, 381 F.3d 391, 400 n.7 (5th Cir. 2004).

[58] 716 F.3d 369, 378 (5th Cir. 2013).

[59] This is a meaningful distinction. As we have observed in the past, the use of "a taser can cause death or serious injury." *Pena v. City of Rio Grande City*, 816 F. App'x 966, 972 n.8 (5th Cir. 2020).

[60] 716 F.3d at 377.

employed "*after* [the] arrestee ha[d] been restrained and handcuffed,"[61] whereas here the Officers took Buehler to the ground and held him there face-down for only as long as it took to handcuff him. It therefore seems quite a stretch to say that *Ramirez* alone "clearly established" that the lesser degree of force used by the Officers in arresting Buehler violated the Fourth Amendment.

Similarly, Buehler points to our decision in *Sam v. Richard*, where we held that an arresting officer's "use of force was objectively unreasonable at the summary judgment stage. Although [the suspect] initially ran, . . . he was lying face down on the ground with his hands on his head when [the officer] kneed him in the hip and pushed him against a patrol car."[62] Even though the suspect's injuries were mild (though still marginally more serious than Buehler's),[63] we concluded in that case that "[s]uch a use of force on a compliant suspect is excessive and unreasonable," and also "it was clearly established . . . that pushing, kneeing, and slapping a suspect who is neither fleeing nor resisting is excessive."[64] To be sure, *Sam* lends some support to Buehler's argument, yet we think the decision is ultimately distinguishable. The Officers here did not "knee" or "slap" Buehler at all, let alone while he was already face down on the ground. They only brought him to the ground

---

[61] *Id.* at 378 (emphasis added).

[62] 887 F.3d 710, 714 (5th Cir. 2018).

[63] The force used against the arrestee in *Sam* "cause[d] him to bleed on the scene and 'left a scab.' . . . [O]ne of [his] friends stated in deposition that, after the incident, [the arrestee] 'looked like he got hit' and 'his face was a little red and bruised.' Finally, according to medical records generated from a medical appointment about six weeks after the incident, [he] complained of lingering pain in his left hip." *Id.* at 712–13.

[64] *Id.* at 714.

in response to movements by Buehler that the Officers reasonably believed to be resistance to arrest.

In our view, of the five cases relied upon by Buehler and discussed above, only *Ramirez* and *Sam* are similar enough to this case to lend any support to his claim that the Officers (or at least Dear, DeVries, and Garibay) violated clearly established law, and still *Ramirez* and *Sam* involved more severe and less appropriate uses of force than that used by the Officers here.[65]

On the other hand, there is ample circuit authority supporting the Officers' position that their use of force did not violate the Fourth Amendment, or at least not clearly established Fourth Amendment law.[66] We have frequently held that officers were either constitutionally justified or entitled to qualified immunity for taking suspects to the ground in response to forms of physical resistance similar to those in which Buehler engaged.[67]

---

[65] Moreover, because *Sam* was decided long after Buehler's arrest, the case plays a limited role in a qualified-immunity inquiry, which turns on whether the unlawfulness of a defendant's conduct was clearly established *at the time it occurred. Harlow*, 457 U.S. at 818.

[66] "In determining what constitutes clearly established law," we first look to "Supreme Court precedent and then to our own," but "[i]f there is no directly controlling authority," we "may rely on decisions from other circuits to the extent" they have reached a consensus on an issue. *Shumpert v. City of Tupelo*, 905 F.3d 310, 320 (5th Cir. 2018). We have similarly consulted other circuits' caselaw in determining whether arresting officers' uses of force violated the Fourth Amendment. *See Sam*, 887 F.3d at 714 n.2.

[67] *See Griggs v. Brewer*, 841 F.3d 308, 314 (5th Cir. 2016) (holding that arresting officers did not violate clearly established law by using "'takedown' maneuver" against arrestee because "under the totality of the circumstances—that is, a late-night traffic stop involving a clearly drunk and obstinate individual, lurching to the side and stating 'no, no,' *in the act* of being handcuffed, immediately following the command to 'put your hands behind your back'—[the arrestee's] actions . . . amount to resistance to arrest"); *Priest v. Grazier*, 860 F. App'x 343, 347 (5th Cir. 2021) (holding that arresting officers "did not violate clearly established law by forcing [arrestee] to the ground to handcuff him" after arrestee failed to "comply with their repeated instructions to roll down his window, open his door, [or] get out of his car."); *Ibarra v. Harris Cty.*, 243 F. App'x 830, 835 (5th Cir. 2007) (similar); *Tennyson v. Villarreal*, 801 F. App'x 295, 296 (5th Cir. 2020) (per curiam)

No. 20-50822

Likewise, a survey of our sister circuits' precedent on this issue turns up "[m]any decisions [that] hold that there is no clearly established rule forbidding a clean takedown [of a suspect] to end mild resistance."[68] To be sure, arrestees in some of the cases to which we have referred were suspected of more serious crimes than Buehler's. But other such cases either involved petty crimes or were apparently decided without regard to the severity of the suspected offenses,[69] suggesting that this consideration ought not affect the outcome here. And as we have previously noted in response to an excessive-force plaintiff's emphasis on "the minor nature of the crime that [a suspect] had allegedly committed," "neither the Supreme Court nor this Court has

---

(similar, though unclear whether holding in defendant officers' favor was based on qualified immunity or lack of Fourth-Amendment violation); *Mathews v. Davidson*, 674 F. App'x 394, 396 (5th Cir. 2017) (per curiam) (finding similar use of force did not violate Fourth Amendment); *Cadena*, 728 F. App'x at 296 (same); *cf. Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012) (similar use of force by officers did not violate Fourth Amendment; arrestee's resistance was greater than Buehler's, but at the same time his injuries due to officers' use of force were more serious than Buehler's); *Robles v. Ciarletta*, 797 F. App'x 821, 827–28 (5th Cir. 2019) (per curiam) (holding that, although assault suspect "only passively resisted" arrest, arresting officer did not violate clearly established law by putting suspect's "arm[] behind [his] back, press[ing] him against a fence," and bringing him "to the ground where [the officer] put [him] in handcuffs"); *Fontenot v. Cormier*, 56 F.3d 669, 675 (5th Cir. 1995) (holding that arresting officer's use of force did not violate Fourth Amendment by tackling arrestee in a manner that caused "no significant injury"— although that suspect, unlike Buehler, had a "history of violence").

[68] *Johnson v. Rogers*, 944 F.3d 966, 969 (7th Cir. 2019); *see Kelsay v. Ernst*, 933 F.3d 975 (8th Cir. 2019) (en banc) (officer entitled to qualified immunity for a bear-hug takedown when an agitated suspect walked away from the officer for the second time); *Hedgpeth v. Rahim*, 893 F.3d 802 (D.C. Cir. 2018) (same for an arm takedown and knee to the leg of suspect who had pulled his hands away as officer attempted to handcuff him).

[69] *See Griggs*, 841 F.3d at 314; *Priest*, 860 F. App'x at 347; *Cadena*, 728 F. App'x at 296; *Poole*, 691 F.3d at 628–29; *see also Ehlers v. City of Rapid City*, 846 F.3d 1002, 1011 (8th Cir. 2017); *Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003); *Schliewe v. Toro*, 138 F. App'x 715, 722 (6th Cir. 2005); *Horn v. Barron*, 720 F. App'x 557, 565 (11th Cir. 2018); *Kelsay*, 933 F.3d at 980; *Hedgpeth*, 893 F.3d at 809–10.

ever held that *all* of the *Graham* factors must be present for an officer's actions to be reasonable."[70]

Ultimately, we conclude that the Officers stayed not only within the bounds of "clearly established law," but also within those of the Fourth Amendment. Looking beyond our circuit, there is a wealth of appellate cases where comparable force by arresting officers under similar circumstances was held not violative of the Fourth Amendment. In case after case, courts upheld officers' use of takedowns to gain control of suspects who had disregarded lawful police orders or mildly resisted arrest, even when arrestees were suspected of minor offenses and the force employed appeared greater than necessary in retrospect—at least when officers' tactics caused arrestees only minimal injuries.[71] Considering this decisional authority, as well as the totality of the factors discussed thus far in our excessive-force analysis, we conclude that none of the four Officers involved in arresting Buehler (Officers Dear, Garibay, DeVries, and McCoy) used excessive force in violation of the Fourth Amendment. The district court thus erred in denying their motion for summary judgment on the excessive-force claims.

Accordingly, Buehler's bystander-liability claims against the other individual Defendants (Officers Sebek, Coffey, Adam, and Hicks) necessarily fail, since "[b]ystander liability arises only where the plaintiff can allege and

---

[70] *Rockwell v. Brown*, 664 F.3d 985, 992 (5th Cir. 2011).

[71] *See, e.g.*, *Charles v. Johnson*, 18 F.4th 686, 700 (11th Cir. 2021); *Horn v. Barron*, 720 F. App'x 557, 564, 565 (11th Cir. 2018); *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1011 (8th Cir. 2017); *Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003); *Griffin v. Hardrick*, 604 F.3d 949, 954–55 (6th Cir. 2010); *Jackson v. City of Bremerton*, 268 F.3d 646, 652 (9th Cir. 2001); *Gomez v. City of Whittier*, 211 F. App'x 573, 576 (9th Cir. 2006); *Bozung v. Rawson*, 439 F. App'x 513, 520–21 (6th Cir. 2011); *Kohorst v. Smith*, 968 F.3d 871, 877 (8th Cir. 2020); *Earnest v. Genesee County*, 841 F. App'x 957, 960–61 (6th Cir. 2021); *see also Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013); *Schliewe v. Toro*, 138 F. App'x 715, 722 (6th Cir. 2005).

prove another officer's use of excessive force."[72] For similar reasons, Buehler's conspiracy and municipal-liability claims also fail insofar as they relate to excessive force, given that both theories likewise require the plaintiff to point to an underlying violation of his or her constitutional rights.[73]

## B

We now consider the issues raised by Buehler's cross-appeal, beginning with his argument that the district court erred in entering summary judgment for the Officers on his false-arrest claims.

Buehler asserts false-arrest claims against Officers Dear, Garibay, DeVries, and McCoy, alleging that they lacked probable cause to arrest him for either interfering with peace officers' official duties in violation of Texas Penal Code § 38.15(a)(1)[74] or resisting arrest in violation of § 38.03(a).[75] The Officers argue in response that, because they subsequently obtained arrest warrants signed by a magistrate, they are shielded from liability by the

---

[72] *Windham v. Harris County*, 875 F.3d 229, 243 n.19 (5th Cir. 2017) (quoting *Kitchen v. Dallas County*, 759 F.3d 468, 481 (5th Cir. 2014)).

[73] *Whitley v. Hanna*, 726 F.3d 631, 648 (5th Cir. 2013); *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995) ("[A] conspiracy claim is not actionable without an actual violation of section 1983.") (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990)). It is not entirely clear whether Buehler's complaint set forth a conspiracy-based theory of liability. The complaint does not use that term, though it makes scattered allegations that, in substance, amount to conspiracy claims, and Buehler's briefing on appeal repeatedly accuses Defendants of conspiracy. We need not decide whether Buehler has adequately raised a conspiracy claim, however, since any such claim obviously fails anyway for the reasons explained in the text to which this footnote is appended.

[74] That section provides, "A person commits an offense if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law."

[75] That section provides, "A person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction from effecting an arrest, search, or transportation of the actor or another by using force against the peace officer or another."

independent intermediary doctrine—which holds that "if facts supporting an arrest are placed before an independent intermediary such as a magistrate . . . , the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party,"[76] even if the warrant application was sought and granted after the arrest took place.[77] This doctrine is derived from the time-honored rule that "a constable . . . cannot be held liable" for acts authorized by a "warrant . . . regular on its face, and . . . issued by a magistrate having jurisdiction over the subject matter"—which "affords a full justification for all acts done by [the officer] in its lawful execution."[78] The district court sided with the Officers and granted their motion for summary judgment on Buehler's false-arrest claims. We agree.

Buehler challenges the district court's rejection of his false-arrest claims on several grounds. First, he argues that the independent-intermediary doctrine should be rejected as inconsistent with the Fourth Amendment. But we have "consistently applied the doctrine in published opinions"[79] and are bound by those holdings.[80] Buehler attempts to sidestep our precedent, suggesting that those cases' underpinnings were called into doubt by the Supreme Court's 1986 decision in *Malley v. Briggs*.[81] There, in a footnote, the Court "conceded that the appellant police officer's argument that he could not have proximately caused a defendant's unlawful arrest by filing an affidavit unsupported by probable cause was not before it on

---

[76] *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994), *overruled on other grounds*, *Castellano v. Fragozo*, 352 F.3d 939, 949 (5th Cir. 2003) (en banc).

[77] *Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 554 (5th Cir. 2016).

[78] *Clarke v. May*, 68 Mass. 410, 413 (1854).

[79] *Buehler*, 824 F.3d at 554.

[80] *See Cent. Pines Land Co. v. United States*, 274 F.3d 881, 893 (5th Cir. 2001) ("one panel of this Court may not overrule another").

[81] 475 U.S. 335 (1986).

appeal," but nonetheless suggested in dicta "that it would not have been receptive to this contention."[82] The problem for Buehler, however, is that we have reaffirmed the independent-intermediary doctrine in multiple precedential cases in the 36 years since *Malley*, repeatedly rejecting litigants' arguments that we should "disregard firmly ensconced circuit precedent in favor of . . . a cursory analysis of *Malley*'s dicta."[83] And just as we are bound by our precedent recognizing the independent-intermediary doctrine, so too are we bound by our precedent holding that the doctrine survived *Malley*.

Second, Buehler argues that, even if we adhere to the independent-intermediary doctrine, his false-arrest claims are still viable because the Officers' conduct in arresting him fell within the doctrine's "taint" exception. Under that rule, "arrest warrants do not insulate" arresting officers from false-arrest liability if their own "false and misleading affidavits tainted the magistrate's deliberations."[84] Buehler argues that Officer Garibay's affidavits, which formed the basis for the magistrate's approval of both warrants, were tainted by materially false statements. But, with one inconsequential exception,[85] Buehler did not bring these supposed inaccuracies to the district court's attention. He has therefore forfeited the

---

[82] *Murray v. Earle*, 405 F.3d 278, 291 (5th Cir. 2005) (citing 475 U.S. at 345 n.7).

[83] *Id.* at 292.

[84] *McLin v. Ard*, 866 F.3d 682, 691 (5th Cir. 2017).

[85] Buehler's filings in the district court identified just "one specific fact . . . in support of his ["taint"] argument," which was his allegation that "Garibay falsely claimed that [Buehler] tried to put his arm underneath himself" while being held face-down during his arrest. 2020 WL 5793008, at *7. Buehler's contention that Garibay misrepresented what occurred during the arrest, even if true, would at best be relevant to the validity of the resisting-arrest charge, but "certainly . . . not . . . [to that of] the Interference with Public Duties warrant." *Id.* That dooms Buehler's attempt at a false-arrest claim, which "does not cast its primary focus on the validity of each individual charge . . . . If there was probable cause for any of the charges . . . then the *arrest* was supported by probable cause, and the claim for false arrest fails." *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995).

opportunity to rely on them on appeal.[86] "It is a well settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, *legal or factual*, why summary judgment should not be entered. If it does not do so, . . . it cannot raise such reasons on appeal."[87] "It is not enough to merely mention or allude to a legal theory in order to raise an argument. Rather, a party must press its claims, which entails clearly identifying a theory as a proposed basis for deciding the case."[88]

Moreover, even if Buehler's supposed examples of misrepresentations in Garibay's affidavit were properly presented for our consideration, they would not affect our conclusion, for none are inaccuracies of a sort that would taint the arrest warrant. All of the affidavit's claims to which Buehler objects either were substantially accurate, were "not material to the [magistrate's] findings of probable cause," or were merely "different interpretations" of events on which "[t]here [wa]s plainly room to

---

[86] Buehler attempts to dodge the forfeiture problem by contending that, "Although the district court incorrectly stated that [he] provided only 'one specific fact'" to support his "taint" argument, "Buehler attempted to correct this mistake by filing a Motion for Reconsideration," which included other purported examples of misrepresentations in Garibay's affidavit. But this does not help Buehler one whit, since "[t]his court will typically not consider an issue or a new argument raised for the first time in a motion for reconsideration in the district court," *U.S. Bank Nat. Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 425 (5th Cir. 2014), especially given that Buehler has offered no explanation for why he did not set forth the other allegations supporting his "taint" argument at an earlier stage of the district-court proceedings.

[87] *Savers Fed. Sav. & Loan Ass'n v. Reetz*, 888 F.2d 1497, 1501 (5th Cir. 1989) (emphasis added) (quoting *Liberles v. Cook Cty.*, 709 F.2d 1122, 1126 (7th Cir. 1983)).

[88] *U.S. Bank Nat. Ass'n*, 761 F.3d at 425 (cleaned up) (quoting *United States v. Scroggins,* 599 F.3d 433, 446 (5th Cir. 2010)).

disagree."[89] And an affiant's presentation of one plausible "version of . . . disputed facts to the magistrate judge" does not taint the resulting warrant.[90]

Indeed, even were we to discard the independent-intermediary doctrine, or to accept Buehler's argument that the arrest warrant was tainted by false statements in Garibay's affidavit, the result would simply be that we would decide ourselves whether Buehler's arrest for interference with official duties was supported by probable cause. It obviously was. We have held, based on caselaw from Texas courts interpreting the relevant provision, that conduct extremely similar to that in which Buehler was engaged—that is, refusing to obey police officers' repeated and unambiguous warnings to step back so as not to interfere with officers' official duties—establishes probable cause to arrest for a violation of Texas Penal Code § 38.15(a)(1).[91]

For these reasons, we conclude that the district court properly entered summary judgment for Defendants Dear, Garibay, DeVries, and McCoy on Buehler's false-arrest claim. And as with Buehler's claim against the City relating to its excessive-force policies, his false-arrest claim against the City, fails for lack of an underlying constitutional violation, since "a municipality cannot be liable '[i]f a person has suffered no constitutional injury at the hands of the individual police officer.'"[92]

## C

We now turn to Buehler's First Amendment claim against the individual Defendants. Buehler asserts that the officers arrested him in

---

[89] *Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 556 (5th Cir. 2016).

[90] *Anderson v. City of McComb*, 539 F. App'x 385, 387 (5th Cir. 2013).

[91] *See, e.g.*, *Childers v. Iglesias*, 848 F.3d 412, 415 (5th Cir. 2017) (citing cases); *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 657 (5th Cir. 2004); *see also Holt v. State*, No. 05-08-00134-CR, 2009 WL 311451, at *2 (Tex. App. Feb. 10, 2009).

[92] *Bustos v. Martini Club Inc.*, 599 F.3d 458, 467 (5th Cir. 2010) (quoting *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam)).

retaliation for filming the officers in a public setting, an activity protected by the First Amendment's freedom-of-speech guarantee. The district court, relying on our 2017 decision in *Turner v. Lieutenant Driver*,[93] held that the officers were entitled to qualified immunity from Buehler's retaliation claim, since it was not clearly established at the time of his arrest in August 2015 that the right to publicly film police was protected by the First Amendment.

The district court properly dismissed Buehler's First Amendment retaliation claim. Buehler is correct that the First Amendment guarantees, subject to reasonable limitations, a right to publicly film police. We are bound, however, by our holding in *Turner* (a published opinion) that the First Amendment right to film police was not clearly established in this circuit as of September 2015.[94] And it follows *a fortiori* from *Turner*'s holding that neither was such a right clearly established a month earlier. Buehler's First Amendment claims against the Officers thus cannot proceed.

## D

Finally, we consider Buehler's municipal-liability claims against the City of Austin. Buehler alleged that the City was liable under § 1983 because (1) the APD's policy governing police treatment of citizens filming officers in public violated such citizens' rights under the First Amendment, and (2) the City failed to train or discipline officers who used excessive force in conducting arrests. The district court dismissed both of Buehler's theories of municipal liability for failure to state claims. First, the district court reasoned that because the First Amendment right to film police was not clearly established as of August 2015, the claim against the City based on its policies governing filming of police could not proceed. The district court also rejected Buehler's failure-to-train and failure-to-discipline theory as insufficiently

---

[93] 848 F.3d 678.

[94] *Id.* at 686.

supported by factual allegations.[95] We agree with the district court, albeit for different reasons, that Buehler failed to state claims against the City under either theory.

For one, as we have already explained, Buehler's claims against the City fail at the outset insofar as they are based on APD policies or practices relating to use of force in carrying out arrests. A "policy, practice, or custom claim[]" against a municipality cannot proceed unless the plaintiff has suffered "an underlying constitutional violation,"[96] and the force used in effectuating Buehler's arrest did not violate the Constitution.

That leaves only Buehler's First Amendment claim against the City. The district court dismissed this claim based on its conclusion that the right to film police was not clearly established as of August 2015. The district court's reasoning appears to have rested on the incorrect assumption that municipalities are entitled to qualified immunity. They are not.[97] And of course our conclusion above that the individual Defendants are entitled to qualified immunity on Buehler's First Amendment claim does not dispose of his corresponding claim against the City, since "a municipality may [still] be liable if a plaintiff states a claim against an official but the official is protected by qualified immunity."[98]

Nevertheless, we "may affirm a district court's Rule 12(b)(6) dismissal on any grounds . . . supported by the record,"[99] and here there is an obvious alternate ground on which to affirm dismissal of Buehler's First

---

[95] 2018 WL 4225046, at *7–8.

[96] *Whitley v. Hanna*, 726 F.3d 631, 648 (5th Cir. 2013).

[97] *See Owen v. City of Independence*, 445 U.S. 622, 638 (1980).

[98] *Bustos*, 599 F.3d 458, 467 n.50.

[99] *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).

No. 20-50822

Amendment claim against the City. Such a claim, just to reiterate, cannot succeed unless the harm he claims to have suffered as a result of the City's policies or practices (his August 2, 2015 arrest) violated the First Amendment. It did not. As the Supreme Court recently held, a "plaintiff pressing a [First Amendment] retaliatory arrest claim must plead and prove the absence of probable cause for the arrest."[100] (An exception exists "when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been,"[101] but Buehler points to no such evidence.[102]) And as we have already explained in affirming summary judgment for Defendants on Buehler's false-arrest claims, the arresting Officers had probable cause to arrest Buehler for interference with official duties. The arrest therefore did not violate his First Amendment rights, and his municipal-liability claim premised on the contrary notion necessarily fails.

## III

Buehler followed the Officer-Defendants for hours that night for purposes of filming them, as is his right. But in the minutes leading up to his arrest, Buehler had positioned himself less than arms' length away from the group of officers, obstructing their view and performance of their duties—and disregarding their warnings of his conduct's unlawfulness. The Officers

---

[100] *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019).

[101] *Id.* at 1727.

[102] Buehler cites several purported examples of other passersby who the Officers permitted to "get close" without arresting them shortly before Buehler was arrested. None of these individuals, however, continued to stand within arms' length of the Officers for a prolonged period after being ordered to stand back, as Buehler did. We therefore do not consider these individuals "similarly situated," *id.*, and so the Officers' failure to arrest them does not raise suspicion that Buehler's contemporaneous arrest was made in retaliation for his filming of the Officers.

then informed Buehler he was under arrest, at which point he turned and began walking away (or so a reasonable officer would have believed). When the Officers reached for his wrists, he suddenly lurched forward. Reasonably believing him to be resisting, the Officers brought him to the ground, where they held him for fewer than 45 seconds—only as long as it took to handcuff him. He suffered only bruises and lesions so minor they cannot be seen in mugshots taken minutes afterwards. Perhaps it was not strictly necessary for the Officers to take Buehler down to effect the arrest. But the seizure, even if imperfect, was not unreasonable.

Summing up: None of the Officers involved in Buehler's arrest used excessive force in violation of the Fourth Amendment; summary judgment for the Officers on Buehler's false-arrest claim was proper; the Officers were entitled to qualified immunity on his First Amendment claim; and Buehler's bystander- and municipal-liability claims, as well as his conspiracy claim, fail for lack of an underlying constitutional violation. We therefore REVERSE the district court's denial of Defendants' summary-judgment motion as to Buehler's excessive-force claim and RENDER judgment for Defendants on that claim.[103] We AFFIRM the district court's judgment in all other respects.

---

[103] "[W]hen the Rule 56 standard has been met, [a] reviewing court may direct the entry of summary judgment . . . . The appellate court either can include the order as part of its opinion or remand the case with directions to enter a summary judgment." 10A CHARLES ALAN WRIGHT ET AL., FED. PRAC. & PROC. CIV. § 2716 (April 2021 update). Here, we opt for the former path. Defendants have specifically requested rendition, and we see no need for a remand given that nothing remains to be done in this case other than entry of judgment—which we can do ourselves. Our cases reversing denials of summary-judgment motions have sometimes remanded for entry of judgment, sometimes rendered judgment outright, and sometimes merely reversed without specifying further procedural steps. *Compare Keller v. Fleming*, 952 F.3d 216, 227 (5th Cir. 2020) (rendering), *with Tucker*, 998 F.3d at 185 (remanding), *and Joseph*, 981 F.3d at 346 (reversing without elaboration).