# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 10, 2025

Lyle W. Cayce
Clerk

No. 23-50185

DAVID BAILEY,

*Plaintiff—Appellee*,

*versus*

OSCAR RAMOS,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:20-CV-466

Before ELROD, *Chief Judge,* and WILLETT and DUNCAN, *Circuit Judges.*
DON R. WILLETT, *Circuit Judge*:

David Bailey and his friends went to downtown San Antonio to "film the police." With cameras rolling, they approached Officers Oscar Ramos and Christopher Dech, who were guarding an ambulance. An altercation ensued, and Bailey was arrested for interfering with the duties of a public servant. He brought various constitutional claims against the City of San Antonio and Officers Ramos and Dech, though this appeal concerns just the claims against Ramos: unlawful arrest, unlawful seizure, First Amendment retaliation, and excessive force. Ramos moved for summary judgment based on qualified immunity, the district court denied it, and Ramos appealed. We

No. 23-50185

REVERSE the denial of summary judgment and REMAND with instructions to grant summary judgment in favor of Ramos and to dismiss Bailey's claims.

I

On April 28, 2018, David Bailey and three friends went to downtown San Antonio "to film the police." Angered by the recent arrest of a friend, they planned for one member of the group to "kind of, be the jerk" to the police officer, and Bailey would "film them" and "go up and be the . . . nice citizen, and say, 'Hey, just leave the – leave the cop alone. Let him do his job.'" But once the officer expressed thanks, Bailey would tell the officer, "I'm here because of what you-all [sic] did to Mike Thompson, and I'm, like Well—well, f*** you."

San Antonio Police Officers Oscar Ramos and Christopher Dech were on bike patrol in downtown San Antonio. They responded to an assault at a bar, and while paramedics administered treatment to the victim inside an ambulance, the officers positioned themselves outside to keep people away. The officers didn't know yet who assaulted the victim, so they were also using the area to interview witnesses.

Bailey and his group were filming and immediately hostile when they first approached Ramos and Dech. Bailey gave the officers the middle finger and said "f*** off" as he walked away. After this initial interaction, most of the group wandered away, and Decha went back to the bar, leaving Ramos alone. One of Bailey's friends, Jack Miller, then walked up to Ramos while openly carrying a gun. Miller asked Ramos, "What are you shaking your f***ing head at?" Ramos asked him to watch his language and to back up. Miller repeatedly asked where he should stand. At first, Ramos told him to "back up" and "go over there," motioning with his hand to move backwards. At that point, Dech returned from the bar to stand beside Ramos in front of

2

the ambulance. Body camera footage shows that Officer Dech instructed Bailey and Miller to "just listen" and that the area was an active crime scene while Bailey and Miller continued to shout over him. Video footage clearly shows Bailey filming this interaction. Meanwhile, Miller continued to ask, "[W]here would you like us to stand?" Dech responded, "[S]tand back behind that line," and pointed to a line in the sidewalk. Miller immediately turned away and walked back, motioning to the group to follow and saying, "[A]lright, let's go, move." Bailey, however, did not immediately comply. Video footage shows him come to a complete stop and turn to face Ramos, while still standing in front of the line.

The parties dispute what happened next. Ramos says that he lightly touched Bailey's shoulder to guide him toward the line. When Bailey stopped moving, Ramos put his arm up again to Bailey's chest, and Bailey responded by "swatting Officer Ramos' arm away, striking him, and causing him to stagger." Then Ramos says that he saw Bailey drop his left hand and clench it into a fist. Because of Bailey's conduct and these "signs of aggression," Ramos asserts he "was in fear of an impending assault." In response, Ramos placed both hands on Bailey's chest and pushed him. He then grabbed Bailey by his upper body and forced him to the ground. Bailey, however, denies swatting Ramos or clenching his fist and alleges that Ramos "pushed [him] back twice before tackling him to the ground, kneeling on him, and then handcuffing him." The video evidence also shows that Bailey yelled "hands off!" in response to the contact with Ramos before he was tackled to the ground.

Dech handcuffed Bailey once Ramos had him on the ground. The officers lifted Bailey into a standing position and placed him up against a nearby wall. There, Bailey repeatedly yelled expletives at Ramos and Dech while they asked him to calm down and sit down. Bailey screamed at both officers that he would "dial up my wife to own your ass" and told Dech that

he would "lock you up with this little piece of sh*t," referring to Ramos. Bailey was moving about and stepped toward the officers. The officers guided him back against the wall with their hands while telling him repeatedly to sit down. Bailey did not comply and responded, "[W]hat, are you going to go hands on again?" Ramos then used some type of leg maneuver to bring Bailey to a seat on the ground.

Bailey was charged with interfering with the duties of a public servant. The charge was later dismissed by the prosecutor's office for lack of evidence.

Bailey sued Ramos and Dech[1] and the City of San Antonio under 42 U.S.C. § 1983, alleging unlawful seizure and arrest, excessive force, malicious prosecution, violation of his right to record the police, and First Amendment retaliation. Bailey also brought municipal-liability claims against the City. All three parties moved for summary judgment, with Ramos arguing he was entitled to qualified immunity. The district court (1) dismissed all of Bailey's claims against the City; (2) dismissed Bailey's right-to-record claim because Bailey had conceded it; (3) granted qualified immunity for the malicious prosecution claim; and (4) denied qualified immunity and summary judgment for the unlawful arrest, unlawful seizure, First Amendment retaliation, and excessive force claims because genuine disputes of material fact existed.[2]

---

[1] The parties later stipulated to dismiss the claims against Dech.

[2] The district court partially granted summary judgment on the excessive force claims to the extent that the claims were based on Ramos briefly placing his knee on Bailey's back while he was being handcuffed and Ramos pulling up Bailey by the handcuffs to a standing position. Bailey does not challenge that holding on appeal.

No. 23-50185

## II

"Ordinarily, we would review the district court's denial of summary judgment *de novo*, applying the same standard as the district court."[3] That standard requires us to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4]

Because this is an interlocutory appeal of a denial of qualified immunity, we "alter[] the usual summary judgment burden of proof."[5] Once a defendant asserts qualified immunity, the plaintiff bears the burden[6] of negating it by showing that (1) the official violated a statutory or constitutional right and (2) the right was "'clearly established' at the time of the challenged conduct."[7] "Although the plaintiff need not identify 'a case *directly* on point' in order to" show the law was clearly established, "he or she must point to 'authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful.'"[8]

---

[3] *Kinney v. Weaver*, 367 F.3d 337, 347–48 (5th Cir. 2004) (en banc) (citing *Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001)) (emphasis removed).

[4] FED. R. CIV. P. 56(a).

[5] *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

[6] *Id.* ("The plaintiff bears the burden of negating qualified immunity, but all inferences are drawn in his favor." (citation omitted)).

[7] *Perniciaro v. Lea*, 901 F.3d 241, 255 (5th Cir. 2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)); *see also Brown*, 623 F.3d at 253.

[8] *Buehler v. Dear*, 27 F.4th 969, 981 (5th Cir. 2022) (quoting *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015)).

5

No. 23-50185

We review summary judgment based on qualified immunity de novo, but only "to the extent that it turns on an issue of law."[9] "This means that the district court's finding that a *genuine* factual dispute exists is a factual determination that this court is prohibited from reviewing in this interlocutory appeal."[10] However, "the district court's determination that a particular dispute is *material* is a reviewable legal determination."[11]

There's one further wrinkle. Where video evidence is available, there is an "exception to the materiality/genuineness rule cited above."[12] "[W]e are required to 'view the facts in the light depicted by the videotape.'"[13] The Supreme Court instructed in *Scott v. Harris* that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."[14] Thus, "we assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene."[15] "Inasmuch as that video evidence is inconclusive, however, the ordinary summary judgment standard applies."[16]

---

[9] *Joseph ex rel. Joseph v. Bartlett*, 981 F.3d 319, 331–32 (5th Cir. 2020) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)).

[10] *Good v. Curtis*, 601 F.3d 393, 397 (5th Cir. 2010).

[11] *Id.*

[12] *Curran v. Aleshire*, 800 F.3d 656, 663 (5th Cir. 2015).

[13] *Boyd v. McNamara*, 74 F.4th 662, 665 (5th Cir. 2023) (quoting *Salazar v. Molina*, 37 F.4th 278, 280 (5th Cir. 2022) (alteration omitted)).

[14] 550 U.S. 372, 380 (2007).

[15] *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011).

[16] *Boyd*, 74 F.4th at 666 (citing *Aguirre v. City of San Antonio*, 995 F.3d 395, 410 (5th Cir. 2021)).

No. 23-50185

## III

The Fourth Amendment governs Bailey's claim for unlawful arrest. "A warrantless arrest must be based on 'probable cause.' Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense."[17] "[T]he adjudication of probable cause is an objective test: [C]ourts must look to the totality of the circumstances and decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer demonstrate a probability or substantial chance of criminal activity."[18]

"If there was probable cause for any of the charges made . . . then the arrest was supported by probable cause, and the claim for false arrest fails."[19] Bailey contends that Ramos lacked probable cause to arrest him. Ramos counters that he had probable cause to arrest Bailey for (1) assault by offensive conduct under Texas Penal Code § 22.01(a)(3) and (2) interference with public duties under Texas Penal Code § 38.15.

### A

We start with assault.

Under the Texas Penal Code, a person commits assault if he or she "intentionally or knowingly causes physical contact with another when the

---

[17] *Resendiz v. Miller*, 203 F.3d 902, 903 (5th Cir. 2000) (per curiam). *See also Brown v. Lyford*, 243 F.3d 185, 191 (5th Cir. 2001) ("[I]f a reasonable officer could have concluded that there was probable cause upon the facts then available to him, qualified immunity will apply." (quoting *Terwilliger v. Reyna*, 4 F.4th 270, 282 (5th Cir. 2021) (cleaned up)).

[18] *Reitz v. Woods*, 85 F.4th 780, 790 (5th Cir. 2023) (quoting *Terwilliger*, 4 F.4th at 282).

[19] *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995).

7

person knows or should reasonably believe that the other will regard the contact as offensive or provocative."[20] The district court denied qualified immunity to Ramos because it concluded that there was a genuine dispute of material fact as to the nature of the contact between Ramos and Bailey before Ramos took Bailey to the ground.

"[T]he district court's finding that a *genuine* factual dispute exists" about the contact between Bailey and Ramos "is a factual determination that this court is prohibited from reviewing in this interlocutory appeal."[21] The *Scott v. Harris* exception that allows us to draw our own conclusions from the video evidence does not alter our review here because the video does not "blatantly" contradict either Ramos's or Bailey's stories about the nature of the contact between them.[22] Even though there were many recording devices at the scene, none of the video evidence clearly shows whether Bailey swatted Ramos or clenched his hand into a fist as though he was preparing to fight. These factual disputes are material because Bailey's conduct and the contact between him and Ramos are part of the "facts and circumstances within the officer's knowledge" that are relevant to whether there was probable cause.[23] Accordingly, because we cannot conclude as a matter of law that Ramos had probable cause to arrest Bailey for assault, we turn to the next charge: interference with public duties.

---

[20] Tex. Penal Code § 22.01(a)(3).

[21] *See Good*, 601 F.3d at 397.

[22] *See* 550 U.S. at 380–81.

[23] *Reitz*, 85 F.4th at 790 (quoting *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009)).

No. 23-50185

B

Under the Texas Penal Code, a person commits the offense of interference with public duties "if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with . . . a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law."[24] To constitute interference, the action must consist of more than just speech alone.[25] But "Texas courts have found that failure to comply with an officer's instructions . . . violates Texas Penal Code § 38.15 and is not protected speech. Specifically, several courts have affirmed convictions of defendants who failed to comply with an officer's instruction to move away from a crime scene."[26]

The district court assessed each of the instances in which Ramos says Bailey refused to comply with his orders and concluded: (1) when Ramos said "go over there," he was speaking to Miller, not Bailey; (2) when Ramos gestured with a hand motion to move backwards, it was not "explicit"; and (3) the order from Dech to stand behind the line was directed at Miller, and Bailey "immediately step[ped] back to look around . . . in order to locate the line," and "it is not clear that [Bailey] even had an opportunity to fully comply with the order, given that Ramos lunged at [Bailey] approximately one second after Dech's instructions." The district court held that there

---

[24] TEX. PENAL CODE § 38.15(a)(1).

[25] *Id.* § 38.15(d). "Texas courts have recognized that merely arguing with police officers . . . falls within the speech exception to section 38.15." *Freeman v. Gore*, 483 F.3d 404, 414 (5th Cir. 2007); *see also Carney v. State*, 31 S.W.3d 392, 398 (Tex. App.—Austin 2000, no pet.) (reversing conviction where no evidence that defendant touched officers or physically obstructed their entry into home).

[26] *Childers v. Iglesias*, 848 F.3d 412, 415 (5th Cir. 2017) (citing *Duncantell v. State*, 230 S.W.3d 835, 842 (Tex. App.—Hous. [14th Dist.] 2007, pet. ref'd); *Key v. State*, 88 S.W.3d 672, 676 (Tex. App.—Tyler 2002, pet. ref'd)).

were genuine factual disputes "as to whether [Bailey] was complying with the officers' instructions in the moments before Ramos lunged at him" and as to "the nature of the contact between [Bailey] and Ramos." Because of these disputed facts, the district court held that it could not "conclude as a matter of law that Ramos had probable cause to arrest [Bailey]."

However, the Supreme Court instructs that police officers who "reasonably but mistakenly conclude that probable cause is present" are entitled to qualified immunity.[27] There must "not even arguably be probable cause for the . . . arrest for the immunity to be lost."[28] A plaintiff must clear this "significant hurdle" in order to defeat qualified immunity.[29]

The district court did not address whether Ramos could have reasonably, although mistakenly, believed that he had probable cause.[30] Assuming that Ramos lacked probable cause, we must still ask whether Ramos "could have reasonably thought his actions were lawful," even if he was mistaken.[31]

---

[27] *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). *See also Reitz*, 85 F.4th at 792 (alteration adopted) (quoting *Mangieri v. Clifton,* 29 F.3d 1012, 1017 (5th Cir. 1994)). "'[T]he objective reasonableness of the defendant officers' conduct goes to the question of whether [the plaintiff's] constitutional right [against being arrested absent probable cause] was violated, not the question of whether that right was clearly established under these particular circumstances.' This inquiry does not aim to 'add[] a standalone 'objective reasonableness' element to the Supreme Court's two-pronged test for qualified immunity.'" *Id.* (quoting *Baker v. Coburn*, 68 F.4th 240, 251 n.10 (5th Cir. 2023)).

[28] *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 657 (5th Cir. 2004) (quoting *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001)).

[29] *Id.*

[30] *See Lyford*, 243 F.3d at 190.

[31] *Reitz*, 85 F.4th at 792; *see also Evett v. DETNTFF*, 330 F.3d 681, 688 (5th Cir. 2003).

Officers told Bailey and Miller multiple times that this was an active crime scene and they should stand back. Despite being told to "just listen," Bailey continued to shout over the officers. Bailey and Miller were both standing close to the officers when Dech instructed that they should "stand back behind that line." Bailey himself was filming the interaction. Miller immediately turned away to comply with the instruction, moving before Dech finished his sentence. Within two more seconds, Miller was motioning to the group to follow and saying, "alright, let's go, move." But Bailey did not move at the same time as Miller. Bailey briefly stepped back and looked backwards, but he came to a complete stop and turned back toward Ramos while still in front of the line. Within two to three seconds of Miller's instruction, Ramos pushed Bailey backwards. Bailey responded by swatting Ramos's arm away.

The district court found that Bailey "immediately step[ped] back and look[ed] around . . . in order to locate the line to which Dech was referring" and that Ramos's assertion that Bailey "failed to move" in response to Dech's orders was "contradicted by the video." The videos confirm that Bailey moved his right foot backwards and that he looked around and then backwards. But it is unclear whether (1) Bailey was reflexively stepping back and looking back in response to Ramos touching his shoulder to guide him backwards, given that Bailey immediately said "hands off" after that contact, or (2) Bailey was stepping back to locate the line, as the district court found.

Regardless, when Bailey continued to talk over the officers' commands, did not start moving at the same time as Miller, and turned back toward Ramos, an officer in Ramos's position could have reasonably thought that Bailey was not complying with the order to move behind the line and

No. 23-50185

thus that there was probable cause to believe that Bailey was interfering with a public duty.[32]

Our court has held as much in similar circumstances. For example, in *Haggerty v. Texas Southern University*, we held that an officer mistakenly but reasonably believed that an action constituted interference with a public duty where the officer warned the individual to not interfere, the individual was within relative proximity of the crime scene, and the individual stepped forward.[33] We said that a reasonable officer in that situation "could have believed that the situation was tense and dangerous," and so a reasonable officer could also have believed that the failure to follow the instruction was interfering with his duties.[34] Likewise, in *Eisenbach v. Zatzkin*, we held that an officer mistakenly but reasonably believed that there was probable cause to arrest for interference with a public duty where the officer warned the plaintiff to leave the area of his investigation, but the plaintiff, believing the investigation was over, approached the area.[35] The plaintiff's approaching the crime scene, which was contrary to the officer's instruction, was sufficient for a reasonable officer to conclude that the plaintiff was interfering with a public duty.[36]

Similarly here, when Bailey didn't immediately move away with Miller, Ramos could reasonably have believed that Bailey, like the plaintiffs in *Haggerty* and *Eisenbach*, was ignoring officer instructions to stay away from the crime scene. Even if Bailey was complying with those instructions,

_____

[32] *See Childers*, 848 F.3d at 415.

[33] 391 F.3d at 657.

[34] *Id.*

[35] 728 F. App'x 307, 311 (5th Cir. 2018).

[36] *Id.*

Ramos, like the officers in *Haggerty* and *Eisenbach*, could have reasonably but mistakenly believed that Bailey's hesitation was contrary to his instructions and interfered with a public duty. This is especially so, given that Bailey had given the officers the middle finger and was cursing at them, and Miller had approached them while openly carrying a gun, giving Ramos reason to believe "the situation was tense and dangerous."[37]

Because we conclude that Ramos could have reasonably, even if mistakenly, believed that he had probable cause to arrest Bailey for interference with a public duty, he is entitled to qualified immunity as to the unlawful arrest claim.[38]

IV

We next address whether Ramos is entitled to qualified immunity as to the unlawful seizure claim.

Ramos seized Bailey's cell phone and belongings incident to his arrest. Bailey asserts that these items were seized without a warrant or probable cause in violation of the Fourth Amendment. Under the Fourth Amendment, people have a right to be free from "unreasonable searches and seizures."[39] "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement."[40] A warrantless search incident to a lawful arrest is one of the oldest and most widely used exceptions to the warrant requirement.[41] Bailey's unlawful seizure claim rises and falls

---

[37] *Haggerty*, 391 F.3d at 657.

[38] *Reitz*, 85 F.4th at 792.

[39] U.S. Const. amend. IV.

[40] *Riley v. California*, 573 U.S. 373, 382 (2014).

[41] *Id.*

with his unlawful arrest claim because the exception would not apply if the arrest were deemed unlawful. Because Ramos is entitled to qualified immunity for Bailey's unlawful arrest claim, he is entitled to qualified immunity for Bailey's unlawful seizure claim.

V

We now turn to whether Ramos is entitled to qualified immunity as to the excessive force claims. Bailey contends that Ramos used excessive force when he: (1) pushed Bailey; (2) grabbed Bailey's shirt and pulled it over his head to slam him to the ground; (3) knelt on Bailey's neck and shoulder; (4) pulled Bailey up by the handcuffs; and (5) swept Bailey's legs out from under him to bring him to the ground.

The district court held that Ramos was entitled to qualified immunity to the extent Bailey's claims were premised on Ramos briefly placing his knee on Bailey's back to effectuate the arrest and lifting Bailey by the handcuffs because neither of these acts violated a clearly established right. It otherwise held that factual disputes precluding summary judgment existed as to whether the other uses of force were objectively unreasonable under the Fourth Amendment. Ramos appealed the denial of summary judgment. Because Bailey did not cross-appeal the limited grant of summary judgment, we do not review the district court's grant of summary judgment for the excessive force claims based on Ramos's placing his knee on Bailey's back or picking him up by the handcuffs.

Ramos contends that Bailey raised the fact of his leg sweep for the first time in his response to Ramos's summary-judgment motion and that it

should therefore not be considered.[42] The district court disagreed, noting that Bailey's complaint, which generally alleged that "Defendants use[d] more physical force than necessary to effectuate the arrest," was broad enough to cover the leg sweep.

We agree. The complaint's reference to physical force used to "effectuate the arrest" is broad enough to cover force used to keep control of Bailey in the minutes after he was placed in handcuffs. We also note that Ramos was on notice about the leg sweep long before discovery closed, as one of Bailey's experts specifically identified it in his report. Accordingly, we review whether Ramos is entitled to qualified immunity on Bailey's excessive force claims regarding both the leg sweep and the other takedown procedures.

Bailey's "excessive force claim is separate and distinct from [his] unlawful arrest claim, and we must therefore analyze the excessive force claim without regard to whether the arrest itself was justified."[43] An officer's use of force is excessive under the Fourth Amendment if the plaintiff can show: "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable."[44] "The second and third elements collapse into a single objective-reasonableness inquiry."[45] To assess reasonableness, we consider three factors that the Supreme Court outlined in *Graham v. Connor*: (1) "the

---

[42] *U.S. ex rel. DeKort v. Integrated Coast Guard Sys.*, 475 F. App'x 521, 522 (5th Cir. 2012) ("[A] plaintiff may not raise a new claim for the first time at the summary-judgment stage.").

[43] *See Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007).

[44] *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (per curiam) (quoting *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005)).

[45] *Pena v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018).

severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," (3) and "whether he is actively resisting arrest or attempting to evade arrest by flight."[46] "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[47] "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment."[48] "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'"[49]

Bailey has met the injury requirement for an excessive force claim. He provided evidence of "abrasion to his wrist and knee, acute neck pain, and a concussion." He also "testified that he still experiences pain in his neck, shoulder, and spine and needs occasional cortisone shots." "[A]s long as a plaintiff has suffered some injury, even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force."[50] Thus, we need only consider whether Ramos's use of force was objectively reasonable under the *Graham* factors.

---

[46] *Deville*, 567 F.3d at 167 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

[47] *Graham*, 490 U.S. at 396.

[48] *Id.* at 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

[49] *Heien v. North Carolina*, 574 U.S. 54, 60–61 (2014) (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)).

[50] *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017) (internal quotation marks and citation omitted).

No. 23-50185

A

We start with the force used during the takedown procedure, when Ramos pushed Bailey and brought him to the ground. The district court denied summary judgment for this use of force because it held that there were genuine disputes of material fact as to the nature of the contact between Ramos and Bailey in the moments preceding the use of force.

Turning to the *Graham* factors to assess the reasonableness of the takedown procedure, first, the offense Bailey was being arrested for—interference with public duties—is "a minor offense" under Texas law.[51] Second, Ramos does not argue that Bailey was actively resisting arrest or attempting to evade arrest by flight. But whether Bailey posed "an immediate threat to the safety of the officers or others"[52] can only be determined once the factual disputes as to the nature of the contact between Ramos and Bailey have been resolved. We cannot review the "district court's finding that a *genuine* factual dispute exists" about the nature of the contact between Bailey and Ramos unless the video evidence blatantly contradicts the story either Ramos or Bailey presents.[53] As we discussed above, none of the video evidence clearly shows the nature of the contact between Bailey and Ramos. Because the nature of the contact is relevant to whether Bailey posed an immediate threat to the safety of others and to the reasonableness of the force used, we agree with the district court and the dissent that these disputes of fact are material.

_____

[51] *Buehler*, 27 F.4th at 983 (quoting *Westfall v. Luna*, 903 F.3d 534, 547 (5th Cir. 2018)).

[52] *Deville*, 567 F.3d at 167 (citing *Graham*, 490 U.S. at 396).

[53] *See Good*, 601 F.3d at 397; *Scott*, 550 U.S. at 380–81.

But even if there is a genuine and material fact dispute as to whether the takedown procedure did amount to excessive force, Ramos is still entitled to qualified immunity because the unlawfulness of his conduct was not clearly established at the time it occurred.[54]

Bailey, for his part, submits that the unlawfulness of Ramos's takedown procedure was clearly established, pointing to our 2012 decision in *Newman v. Guidry*.[55] In *Newman*, the defendant-officers severely beat and tased a passenger of a stopped car, precipitated only by the passenger's suggestion that one of the officer's hands "remained on [his] crotch for an uncomfortable length of time" during the pat-down search.[56] There was, moreover, no evidence that the passenger failed to comply with any lawful order before officers hit him thirteen times with a baton, tased him three times, and dragged him to the sidewalk with taser barbs in his skin and his shorts around his ankles.[57] We accordingly held that the officers' force was objectively unreasonable under *Graham* and violated the passenger's clearly established constitutional right to be free from such force.[58]

We agree with Ramos that our decision in *Newman* is not sufficiently analogous to have put him on notice that his conduct was unlawful. Most notably, unlike in *Newman*, Bailey was given an order with which to comply, thus rendering the circumstances preceding Ramos's use of force materially

---

[54] *See Hogan*, 722 F.3d at 735. *Cf. Kokesh v. Curlee*, 14 F.4th 382, 409 (5th Cir. 2021) (Willett, J., dissenting) (arguing that officer was not entitled to summary judgment on qualified immunity where there were genuine disputes of material fact *and* plaintiff's constitutional rights were clearly established at the time of the arrest).

[55] 703 F.3d 757 (5th Cir. 2012).

[56] *Id.* at 760.

[57] *Id.* at 760–63.

[58] *Id.* at 763–64.

different. And the level of force the officers used in *Newman* far exceeded the force that Ramos used here.[59]

*Newman* is not this court's only relevant precedent.[60] However, further review of our caselaw shows that it was not clearly established in April 2018 that Ramos's takedown procedures were unlawful.

Just weeks before Bailey's arrest, we denied qualified immunity and observed in *Sam v. Richard* that "it was clearly established . . . that pushing, kneeing, and slapping a suspect who is neither fleeing nor resisting is excessive."[61] However, the use of force in *Richard* is distinguishable in that it was used *after* the plaintiff was lying face down on the ground, with his hands on the back of his head.[62] Under *Richard*, an officer isn't entitled to qualified immunity if takedown procedures are used *after* the officer has

---

[59] The dissent suggests that we fail to view the evidence in the light most favorable to Bailey. However, considering the clear video evidence and the facts in Bailey's favor, Ramos's force consisted of placing an arm to Bailey's chest, placing both hands on Bailey's chest and pushing him, pulling Bailey's shirt, and grabbing Bailey's upper body and pushing him to the ground. None of these actions rise to the level of violence exhibited in *Newman* or in the other cases we distinguish below.

[60] The only case Bailey cited in his reply brief is *Newman*. To be sure, we have recited many times that "[t]he plaintiff has the burden to point out clearly established law." *Tucker v. City of Shreveport*, 998 F.3d 165, 173 (5th Cir. 2021). But we have never understood this burden to mean that we are artificially boxed in by only those cases cited in the plaintiff's brief. Indeed, as we recently observed in a qualified-immunity case, "this court is not restricted to analyzing the issues properly presented by the parties only on the authorities cited by the parties." *Templeton v. Jarmillo*, 28 F.4th 618, 622 (5th Cir. 2022). The Supreme Court has similarly held that "[a] court engaging in review of a qualified-immunity judgment should . . . use its full knowledge of its own and other relevant precedents." *Elder v. Holloway*, 510 U.S. 510, 516 (1994) (alterations and internal quotation marks omitted). Nevertheless, our review of the caselaw shows that it was not clearly established at the time of Bailey's arrest that Ramos's takedown procedures were unlawful.

[61] 887 F.3d 710, 714 (5th Cir. 2018).

[62] *Id.*

No. 23-50185

gained control of the suspect. But that isn't the case here, where Bailey wasn't yet handcuffed, and Ramos used force to gain control of Bailey under the reasonable belief that Bailey was disregarding his orders. Moreover, the force used in *Richard*—slapping the suspect across the face and kneeing him while he was face down on the ground with his hands on the back of his head[63]—was more severe and less appropriate than the shove, pulling of Bailey's shirt, and push to the ground that Ramos used here to gain control of and handcuff Bailey.[64]

Similarly, in *Bush v. Strain*, a decade earlier, we held that it was clearly established that officers could not "forcibly slam[]" a "handcuffed and subdued" individual's face "into a nearby vehicle" when the individual "was not resisting arrest or attempting to flee."[65] But, again, that is not the case here. True, Ramos doesn't contest that, like the suspect in *Bush*, Bailey wasn't resisting arrest. But we have "frequently held" that takedown procedures like pushing a suspect and bringing him to the ground are lawful ways to gain control of and arrest a suspect before he has been handcuffed and subdued.[66] *Bush* does not clearly establish that use of takedown procedures is unlawful when law enforcement hasn't yet gained control of the suspect. So, even if Bailey wasn't resisting arrest, as determined above, a reasonable officer could have believed he was refusing to follow instructions and thus needed to be subdued using such measures.

-------------------

[63] *Id.*

[64] *See Buehler*, 27 F.4th at 987 (distinguishing *Richard* and finding qualified immunity because *Richard* "involved more severe and less appropriate uses of force" than used by the *Buehler* officers).

[65] 513 F.3d 492, 502 (5th Cir. 2008).

[66] *Buehler*, 27 F.4th at 988 n.67. Though *Buehler* was decided after Bailey's arrest, several of the cases it cites were decided prior to Bailey's arrest in 2018.

The dissent also points to *Trammell v. Fruge*,[67] *Joseph v. Bartlett*,[68] and *Darden v. City of Fort Worth*[69] as showing that Ramos's conduct was a clearly established violation of Bailey's constitutional rights at the time of the arrest. But analogy to these cases suffers the same flaws as analogies to *Richard* and *Bush*—the officers were not "acting under similar circumstances" as Ramos, so the cases cannot have put him on notice that his actions were unconstitutional.[70]

For example, in contrast to the plaintiffs in those cases, Bailey was not yet subdued when officers exerted the alleged excessive force. In *Darden*, we denied qualified immunity where video evidence showed that officers exerted force *after* the plaintiff was kneeling with his hands in the air and following officer instructions, all while bystanders were shouting to the officers that the plaintiff couldn't breathe.[71] Likewise, in *Joseph*, the officers exerted force *after* the plaintiff was already lying on the ground in the fetal position, obviously subdued.[72] By contrast, although Bailey was not actively resisting arrest, he had not given officers an obvious indication that he was subdued, such as kneeling with his hands in the air or lying in the fetal position. Instead, he was on his feet, shouting over officer instructions, and obstructing an active crime scene. Bailey hasn't pointed to any case saying that officers may not use some force to subdue an arrestee in this situation.

_____

[67] 868 F.3d 332 (5th Cir. 2017).

[68] 981 F.3d 319.

[69] 880 F.3d 722 (5th Cir. 2018).

[70] *See Joseph*, 981 F.3d at 337 (citing *D.C. v. Wesby*, 583 U.S. 48, 64 (2018) (cleaned up)).

[71] *Darden*, 880 F.3d at 725, 730–33.

[72] *Joseph*, 981 F.3d at 340.

No. 23-50185

These cases are also distinguishable in the *amount* of force officers used. We have held that "the degree of force an officer can reasonably employ is *reduced* when an arrestee is not actively resisting."[73] But none of these cases suggest that Ramos's use of force—putting his hands to Bailey's chest, pulling his shirt, and pushing him to the ground—was more force than reasonably necessary to subdue Bailey under the circumstances. Ramos's force was far milder than the officers in *Darden*, who "threw [plaintiff] to the ground, tased him twice, choked him, punched and kicked him in the face, pushed him into a face-down position, pressed his face into the ground, and pulled his hands behind his back to handcuff him."[74] And Ramos's actions were less violent than the officers' actions in *Trammell*, which consisted of grabbing plaintiff's arms, executing knee strikes and a headlock, and tackling him.[75] Ramos also acted far more proportionally than the officers in *Joseph*, who held the plaintiff's body down and tased him for 11 seconds, struck him with a baton at least twice, tased him again, then kicked and punched him multiple times.[76] These much more extreme cases thus do not clearly establish that Ramos "should have known that he could not use that amount of force on an individual who was not resisting arrest."[77] By contrast, even taking the facts in the light most favorable to Bailey, Ramos pushed Bailey, shoved him to the ground, then stopped the force immediately after Bailey was handcuffed. Bailey cannot point to any case saying that this amount of force was not reasonably necessary to subdue Bailey under the

---

[73] *Darden*, 880 F.3d at 733 (emphasis added).

[74] *Id.* at 725.

[75] *Trammell*, 868 F.3d at 337–38.

[76] *Joseph*, 981 F.3d at 326–27.

[77] *Darden*, 880 F.3d at 731–32.

No. 23-50185

circumstances. We thus cannot say that Ramos's actions were "plainly in conflict with our caselaw at the time of the alleged misconduct."[78]

Bailey has thus failed to meet his burden to show that it was clearly established at the time of his arrest that Ramos's takedown maneuver was an unlawful use of force. Accordingly, Ramos is entitled to qualified immunity on this claim.

B

We turn now to whether Ramos used excessive force when he swept Bailey's legs out from under him.

The district court denied summary judgment for this use of force, holding that Ramos used a leg sweep on a "subdued suspect who had not resisted arrest," violating Bailey's clearly established rights. Our caselaw has "clearly established . . . that, once a suspect has been handcuffed and subdued, and is no longer resisting, an officer's use of force is excessive."[79] But use of force against a handcuffed suspect is not excessive if the suspect is resisting by ignoring lawful commands.[80]

Video evidence clearly shows that, after Bailey was handcuffed, he was placed standing up against a wall. There, he repeatedly yelled expletives at Dech and Ramos. Both officers told Bailey to "sit down" and "kneel down," to which Bailey defiantly responded, "[W]hat, are you going to go hands on again?" The officers responded by maneuvering Bailey so that his back was against the wall. Ramos then used some type of leg maneuver to seat

_____

[78] *Id.* at 733.

[79] *Carroll v. Ellington*, 800 F.3d 154, 177 (5th Cir. 2015).

[80] *See Pratt v. Harris County*, 822 F.3d 174, 178 (5th Cir. 2016) (finding use of force is not excessive against handcuffed suspect who is verbally and physically resisting).

him on the ground. Bailey slid with his back along the wall to the ground, with Dech's hand on his chest guiding him down. Because the video evidence shows that Bailey was not complying with the officers' lawful orders to sit down, Ramos's responsive use of force was not objectively unreasonable under the Fourth Amendment.[81]

Because the video evidence is clear that bringing Bailey to a seat with a leg sweep was not an objectively unreasonable use of force, Ramos is entitled to qualified immunity.

## VI

Finally, we turn to Bailey's First Amendment retaliation claim. To survive summary judgment, Bailey must show there is at least a genuine dispute of material fact that "(1) [he was] engaged in constitutionally protected activity, (2) the defendant['s] actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendant['s] adverse actions were substantially motivated against the plaintiff['s] exercise of constitutionally protected conduct."[82] A retaliation claim is only available "when non-retaliatory grounds are in fact insufficient to provoke" the arrest, meaning

---

[81] *See Buehler*, 27 F.4th at 988 n.67 (collecting cases showing instances in which bringing suspect to the ground was neither excessive force nor unreasonable); *Childers*, 848 F.3d at 415 (holding that plaintiff's conduct moved beyond speech when he failed to follow the deputy's instruction to move his truck); *Deville*, 567 F.3d at 167 ("Officers may consider a suspect's refusal to comply with instructions during a traffic stop in assessing whether physical force is needed to effectuate the suspect's compliance.").

[82] *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

that the officer's subjective motivation must be the but-for cause of the adverse action against the plaintiff.[83]

The district court denied summary judgment on this claim.

The parties do not dispute that Bailey satisfies the first prong. And for good reason: In *Turner v. Lieutenant Driver*,[84] we held that the right to film police under the First Amendment is clearly established, "subject only to time, place, and manner restrictions."[85]

The second prong requires an injury that would "chill a person of ordinary firmness from continuing to engage in that activity."[86] "The effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights, it need not be great in order to be actionable."[87] Bailey contends that "arresting and injuring [him], while seizing his belongings, would chill a person of ordinary firmness . . . ." We agree that the injuries Bailey suffered as a result of the use of force during his arrest meet this standard.

As to the third prong, "[a]t the summary judgment stage, [Bailey] cannot rely on allegations; he must produce specific support for his claim" that Ramos had an "unconstitutional motive."[88] We do not require plaintiffs to produce direct evidence. "Circumstantial evidence is equally as probative

_____

[83] *See Degenhardt v. Bintliff*, —F.4th—, No. 24-40034, 2024 WL 4274180, *7 (5th Cir. September 24, 2024).

[84] 848 F.3d 678 (5th Cir. 2017).

[85] *Id.* at 688.

[86] *Keenan*, 290 F.3d at 258.

[87] *McLin v. Ard*, 866 F.3d 682, 697 (5th Cir. 2017) (quoting *Keenan*, 290 F.3d at 258).

[88] *See Tompkins v. Vickers*, 26 F.3d 603, 608 (5th Cir. 1994).

as direct evidence in proving illegitimate intent. Also, direct evidence of an improper motive is usually difficult, if not impossible, to obtain. Thus, requiring direct evidence of an improper motive would effectively insulate from suit public officials who deny an improper motive . . . ."[89]

Looking to circumstantial evidence, Bailey points out that Ramos did not pay attention to or arrest any of the people walking through the area who were not recording. True, the fact that "he was arrested when otherwise similarly situated individuals not engaged in the same sort of speech had not been" would be good evidence in his favor.[90] But the video evidence blatantly contradicts Bailey's characterization of events. None of the passersby walking through the crime scene were "similarly situated" to Bailey. Apart from those whom the officers were interviewing as witnesses, no one stopped and lingered in close proximity to the ambulance. Bailey was the only person who appeared to disregard police orders to stay back from the crime scene. Indeed, video shows other individuals recording the interaction, and those individuals were not arrested.

Bailey hasn't pointed to any other evidence that would show that Ramos had a subjective retaliatory motive, much less that any such motive was the but-for cause of Ramos's decision to arrest him. Video evidence blatantly disputes his only argument. As a result, no dispute of material fact exists, and Ramos is entitled to judgment as a matter of law on Bailey's First Amendment retaliatory arrest claim.

_____

[89] *Id.* at 609.

[90] *Gonzalez v. Trevino*, 144 S.Ct. 1663, 1665 (2024) (citing *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019)).

No. 23-50185

## VII

We REVERSE the denial of summary judgment and REMAND with instructions to grant summary judgment in favor of Ramos and to dismiss Bailey's claims.

No. 23-50185

JENNIFER WALKER ELROD, *Chief Judge*, concurring in part and dissenting in part:

I agree with the majority opinion as to all of Bailey's claims except for the excessive-force claim based on Ramos pushing Bailey, grabbing him around the upper neck and back, and taking him to the ground. In my view, there are genuine disputes of material fact that preclude summary judgment on that excessive-force claim and require us to dismiss that portion of the appeal for lack of jurisdiction. I believe that the majority opinion errs because it does not view these factual disputes in the light most favorable to Bailey.

I

In an interlocutory appeal of a denial of qualified immunity, when the district court determines that there is a genuine factual dispute and that dispute is material, under our long-standing precedent in *Kinney v. Weaver*, 367 F.3d 337 (5th Cir. 2004) (en banc), we must dismiss the appeal for lack of jurisdiction. *See id.* at 346–47.

Here, the district court concluded that there were genuine disputes of fact as to whether Bailey was complying with Officer Ramos's and Officer Dech's instructions to stand behind a line in the sidewalk. The district court reviewed the video footage and stated that Bailey and his friend Miller "both appear to immediately step back and look around them in order to locate the line to which Dech was referring." It observed that "it is not clear that [Bailey] even had an opportunity to fully comply with the order, given that Ramos lunged at [Bailey] approximately one second after Dech's instructions." The district court determined that Bailey "appear[ed] to initially comply with the order to move behind the line."

The district court also determined that there were genuine factual disputes regarding the contact between Bailey and Ramos. It noted that there was conflicting testimony about Bailey allegedly "swatting" Ramos and

concluded that "[b]ecause the video footage does not offer a clear view of the nature of [Bailey's] contact with Ramos, a jury would need to rely on credibility determinations and weigh the evidence to resolve the question." In the district court's view, "taking the facts in the light most favorable to [Bailey], a jury could conclude that Ramos's use of force was objectively unreasonable in light of clearly established law at the time of the incident."

Here, the video evidence does not blatantly contradict either Bailey's or Ramos's version of the facts—as the majority opinion itself acknowledges. Accordingly, we cannot and should not review the genuineness of those factual disputes. *See Kinney*, 367 F.3d at 346–47; *Curran v. Aleshire*, 800 F.3d 656, 663–64 (5th Cir. 2015) (noting that the *Scott v. Harris* exception to the materiality/genuineness rule applies only if the plaintiff's story is "blatantly contradicted" by the video evidence).

Further, the district court correctly determined that these factual disputes are material to the determination of whether Ramos's use of force was excessive, and the majority opinion again agrees. Thus, in this case, "we do not second-guess the district court's determination that there are genuine disputes of material fact" in the qualified-immunity context, and summary judgment is improper. *See Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 331, 346 (5th Cir. 2020); *see also Roque v. Harvel*, 993 F.3d 325, 339 (5th Cir. 2021); *Kokesh v. Curlee*, 14 F.4th 382, 409 (5th Cir. 2021) (Willett, J., dissenting) ("[B]ecause there are genuine disputes of material fact . . . , the conclusion is apparent: [the defendant] is not entitled to summary judgment on this claim."). I would accordingly dismiss the appeal as to Bailey's excessive-force claim based on the takedown for lack of jurisdiction. *See Kinney*, 367 F.3d at 347.

## II

These factual disputes are also material to the analysis of whether Bailey's rights were clearly established under our precedent. I believe that the majority opinion errs because it fails to view the factual disputes in the light most favorable to Bailey when conducting that analysis. "[T]o overcome qualified immunity, *the plaintiff's version* of th[e] disputed facts must also constitute a violation of clearly established law." *Joseph*, 981 F.3d at 330 (emphasis added).

When viewing the facts in the light most favorable to Bailey, Ramos's takedown of Bailey could have violated clearly established law. Although officers may use some physical force to effectuate an arrest, they must also consider "the relationship between the need and the amount of force used." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (quoting *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999)). The majority opinion asserts that Ramos could have reasonably believed that Bailey was not complying with orders and that Ramos's use of force was thus necessary to gain control of Bailey. However, Bailey's compliance is in dispute, and "[w]e have no more ability to review these factual disputes as to clearly established law than we did as to the constitutional merits—which is to say, none." *Joseph*, 981 F.3d at 337. Further, disobeying orders generally does not constitute active resistance. *See id.* at 339; *Trammell v. Fruge*, 868 F.3d 332, 341 (5th Cir. 2017). "Our case law makes clear that when an arrestee is not actively resisting arrest the degree of force an officer can employ is reduced." *Darden v. City of Fort Worth*, 880 F.3d 722, 731 (5th Cir. 2018); *see also id.* at 730 (determining that the video evidence did not resolve the factual dispute over whether the plaintiff complied with commands or resisted arrest); *Trammell*, 868 F.3d at 341 (concluding that there was a factual dispute as to whether the plaintiff was actively resisting arrest by refusing to comply with orders and pulling his arm away from officers). If Bailey was not dangerous, was not

No. 23-50185

disobeying orders, and was not resisting arrest, a jury could find that a reasonable officer would know that the amount of force used to subdue Bailey was excessive.

For example, in *Trammell v. Fruge*, we held that the law in 2013 "clearly established that it was objectively unreasonable for several officers to tackle an individual who was not fleeing, not violent, not aggressive, and only resisted by pulling his arm away from an officer's grasp." 868 F.3d at 343. There, the officers grabbed the plaintiff's arms, used a knee strike, put him in a headlock, and "pulled [him] to the ground." *Id.* at 337. We described this force as "tackling [the plaintiff] to the ground" and determined that such force was excessive even when used before the officers had "subdue[d] and handcuff[ed] him." *Id.* at 337–38, 342. Our caselaw also clearly establishes that "violently slamming or striking a suspect who is not actively resisting arrest constitutes excessive use of force." *See Darden*, 880 F.3d at 732–33. Finally, in *Sam v. Richard*, 887 F.3d 710 (5th Cir. 2018), we also determined that the force used before handcuffing the suspect was excessive because the suspect was compliant. *See id.* at 712. In sum, if Bailey did not pose an immediate threat and was compliant—questions on which there are open factual disputes and on which we must make all inferences in Bailey's favor—it is clearly established that Ramos was not justified in resorting to using the takedown maneuver. *See Trammell*, 868 F.3d at 342 ("[T]he quickness with which the officers resorted to tackling [the plaintiff] to the ground militates against a finding of reasonableness.").

As we have previously observed:

[A] jury could ultimately determine that the suspect was in fact resisting arrest or disobeying commands. And under those alternative facts, the officers' force may have been reasonable under the Fourth Amendment and reasonable under the clearly established law. Yet, a genuine dispute of material fact existed,

31

meaning that a jury could also find facts demonstrating the opposite. Therefore, the officers were not entitled to qualified immunity at the summary-judgment stage.

*Joseph*, 981 F.3d at 342 (footnotes omitted) (citing *Darden*, 880 F.3d at 731–32). I would thus hold that Bailey has overcome qualified immunity at this stage on his excessive-force claim based on Ramos's takedown.

## III

Simply put, the interlocutory appeal of the excessive-force claim based on Ramos's takedown maneuver should have been dismissed for lack of jurisdiction. *See Kinney*, 367 F.3d at 347. Genuine disputes of material fact preclude our jurisdiction over the appeal of this claim and make granting qualified immunity at the summary-judgment stage improper. When the facts are properly viewed in the light most favorable to Bailey, a reasonable jury could find that Ramos's use of force in these circumstances violated clearly established law. I respectfully dissent in part.